UNITED STATES of America,
Plaintiff–Appellee,

v.

Isiaka ODULOYE, Defendant–Appellant.

No. 90–1538.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1990.
Decided Feb. 5, 1991.

**117**

Donna B. More, Office of the U.S. Atty., Barry R. Elden, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

William Hedrick, Skokie, Ill., for defendant-appellant.

Before WOOD, Jr., COFFEY, and FLAUM, Circuit Judges.

PER CURIAM.

After making a stop in Amsterdam, Defendant Isiaka Oduloye arrived in Vancouver, Canada, on April 25, 1989, on a flight bound from his homeland of Nigeria. Oduloye had a return ticket to Nigeria via New York City. Upon his arrival in Vancouver, Canadian customs officials questioned him because they suspected that he was a drug courier. The Canadian authorities released him, and he purchased a one-way ticket to Chicago with cash. The Canadian officials notified authorities in Chicago of their suspicions, and upon arrival in Chicago, Oduloye was found to have a distended stomach. He was taken into custody after he refused to consent to an X-ray. A court order was obtained, and Oduloye was found to be carrying a large number of "balloons" in his alimentary canal. He was admitted to a hospital and soon passed more than 100 heroin-filled balloons from his system. He was thereafter charged with violations of 21 U.S.C. § 841(a) (possession with intent to distribute) and 21 U.S.C. § 952 (knowing importation of heroin).

During an initial discussion with federal agents, Oduloye stated that he did not have a contact person in Chicago, and that he had intended himself to sell the heroin on the streets. Later, Oduloye recanted and gave the agents the name and telephone number of an alleged contact person; he maintained that he had never met the person, only that the person was his Chicago contact and would pay him a prearranged $3000 fee for importing the drugs.

Oduloye soon entered into plea negotiations with the federal government. At an initial plea hearing, Oduloye was questioned about his participation in the smuggling scheme. However, at the hearing Oduloye told the judge that he did not know that the balloons contained heroin. Since he had been charged with the *knowing* importation of heroin, the hearing was halted and the plea was rejected. Oduloye returned on November 28, 1989, and pleaded guilty, agreeing that he knew there was heroin in the balloons.

Despite Oduloye's seemingly uncooperative actions, the government agreed in Oduloye's plea agreement to a two-level reduction under section 3E1.1 of the Sentencing Guidelines on grounds that Oduloye had "accepted responsibility" for his criminal acts. The plea agreement carried the standard caveat that the actual sentence could vary depending on the outcome of the presentence report. In fact, the probation officer who prepared Oduloye's presentence report, Patricia Diaz, concluded that a decrease was inappropriate and recommended that the judge not grant the reduction for acceptance of responsibility. Rather, Diaz concluded in her report that a two-level *increase* was appropriate under section 3C1.1 for obstruction of justice. As grounds for her recommendation, Diaz cited Oduloye's attempts while in the hospital to hide several of the balloons he passed, his initial refusals to cooperate with authorities, and his denial at the initial plea hearing of any knowledge that the balloons were filled with heroin. Diaz believed that Oduloye was still not being completely honest with authorities, since evidence suggested that Oduloye's true contact person was located in New York City, Oduloye's ultimate destination, rather than in Chicago, where he was fortuitously arrested.

Oduloye filed objections to the presentence report. He claimed that he demonstrated his remorse during his interview with the probation officer, that his actions in the hospital room were based on fear, and that he had been completely honest and cooperative with the authorities since that incident. The district court judge, however, followed Diaz' recommendation and sentenced Oduloye to 97 months in prison (the minimum the guidelines permitted). The judge cited Oduloye's first botched plea attempt, his attempt to hide the balloons, and his initial false statements to the federal agents as grounds for refusing to grant the two-level reduction. The judge cited Oduloye's attempt to conceal the balloons as grounds for increasing the defendant's sentence two levels for obstruction of justice.

## I.

◼ Oduloye appeals his sentence on two grounds: (1) the district court erred in failing to give him a two-level reduction for acceptance of responsibility; and (2) Oduloye is entitled to have a new presentence report compiled since officer Diaz had sought and received a job offer from the FBI during the time she prepared the presentence report in his case.

Oduloye's first challenge essentially holds that the sentencing judge committed errors of fact in failing to credit his version of the facts. We affirm the district court's decision if its findings of fact do not leave us " 'with the definite and firm conviction that a mistake has been committed.' " *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). Determinations of credibility are distinctly decisions to be made by the district court. *United States v. Reynolds*, 900 F.2d 1000, 1004 (7th Cir.1990). The sentencing judge's decision in this case is clearly supported by facts to which Oduloye concedes: Oduloye initially lied to federal agents, he attempted to conceal crucial evidence, and even as late as his first guilty plea hearing refused to acknowledge fully his involvement in the crime. Oduloye's expression of remorse at his second plea hearing did not preclude the district court judge from denying the two-level reduction.[1] The judge's

---

1. Oduloye also seems to raise the argument that it was error for the judge to *increase* his sentence based on obstruction of justice under section 3C1.1. Even if this argument was not waived for failure to raise it below, *see United States v. Smith*, 897 F.2d 909, 911 (7th Cir.1990) (per curiam), Oduloye's conduct in attempting to conceal the balloons in the hospital is precisely the type of conduct the guidelines contemplate. *See* USSG § 3C1.1, Note 1 ("destroying or concealing material evidence" may provide a basis for applying adjustment).

Even if Oduloye's claim had merit, a two-level reduction would still leave him with a possible 97–month sentence. If reduced, the sentencing range would be 78 to 97 months, rather than 97 to 121 months. As we recently stated in *United States v. Dillon*, 905 F.2d 1034, 1037 (7th Cir.1990), if "the same sentence would have been imposed under either of two overlapping Guide-

decision was not clearly erroneous as it was fully supported by the record.

## II.

■ Oduloye next argues that he was prejudiced by Diaz' employment negotiations with the FBI during the time she was conducting her presentence investigation. Although the facts are not entirely clear, it appears that Diaz began her job with the FBI a few days after Oduloye's sentencing hearing on February 27, 1990. Federal employment application and screening procedures being what they are, Diaz' interactions with the government were undoubtedly frequent and long-running. Yet Diaz failed to reveal either her employment discussions or, later, her employment offer to the sentencing judge. The Assistant U.S. Attorney present at the sentencing hearing likewise did not inform the judge of this development, although it is unclear whether he had personal knowledge of Diaz' activities.

In any event, the judge clearly should have been informed of Diaz' change in employment prior to his sentencing decision. As a probation officer, Diaz' allegiance was to the court, not the prosecution. One of her duties was to fairly and accurately prepare a report on the defendant's background in order to assist the judge in arriving at a sentencing decision. While there certainly is no legal presumption that a person loses all objectivity by becoming an FBI agent, the FBI (along with the U.S. Attorney's Office) is an integral part of the prosecutorial arm of the federal government, not the judiciary.

There is the appearance of impropriety in Diaz' failure to disclose her change in employment, particularly in this situation where she took a sterner position on the ultimate sentencing outcome than did the government. While the government agreed that the defendant was entitled to a lower sentence for accepting responsibility for his acts, Diaz insisted not only that he was not entitled to a reduction, but that he deserved an increase.[2]

The U.S. Attorney's Office was under a duty to disclose Diaz' change in employment, if known, to the judge. Although the Assistant U.S. Attorney who argued the case on appeal stated at oral argument that he had no knowledge of Diaz' job change, it is quite difficult to believe that no one in the U.S. Attorney's Office knew of Diaz' prospective employment. It would be the normal procedure for an FBI agent to interview people in the U.S. Attorney's Office familiar with Diaz before she was hired. It was therefore incumbent on the U.S. Attorney to ensure that this employment information was revealed to judges in this and other cases to avoid the appearance of impropriety. We find no impropriety, but we understand why a defendant in these circumstances would raise the issue. We also note that this case was developed by U.S. Customs officials, not the FBI. Even so, it would be well that appropriate administrative measures be taken in the future to avoid the recurrence of a similar incident. Other probation officers would be available to make an investigation in similar circumstances.

After filing his notice of appeal with this court, Oduloye filed a motion with the sentencing judge requesting a new presentence investigation on the grounds that Diaz was biased by her job change. Although the court lacked jurisdiction to consider the motion,[3] the judge denied the mo-

---

lines ranges, the technical dispute over offense levels may be left unresolved." We are convinced that the sentencing judge in this case would impose the same sentence on Oduloye if we reversed the judge's decision not to grant a two-level reduction for accepting responsibility. The judge was very explicit at the sentencing hearing that Oduloye had committed a very serious crime and that a message had to be sent to others contemplating similar actions. *See also infra* page 119.

2. It seems fair to characterize Diaz' actions at the sentencing hearing as assertive. She volunteered information to the judge, disputed the defendant's version of the facts, and pushed for an increase in the sentence.

3. Once the notice of appeal was filed, a district court is generally divested of jurisdiction over the case. *United States v. Sanders,* 893 F.2d 133, 135 (7th Cir.1990); *United States v. O'Connor,* 874 F.2d 483, 489 (7th Cir.1989).

tion on the merits and dismissed Oduloye's request. The judge stated that "[t]he statements of the probation officer, within the totality of the circumstances surrounding the case and the sentencing hearing, were of nominal significance and served primarily to raise, for the court's full consideration, the issue regarding acceptance of responsibility by the defendant." The view taken by the district court was fully justified.

The judge's statement assures us that the outcome of the sentencing decision would be no different if a new presentence investigation were conducted. In addition, Oduloye fails to allege with specificity how he was prejudiced by Diaz' actions or how a new presentence investigation could provide any different conclusions in his case. He does not claim that a new investigation would uncover additional facts that would warrant the relief he seeks. The ultimate sentencing decision belongs to the judge, and, even though judges may rely heavily on a probation officer's presentence report, in this case we are convinced that the judge would arrive at the same sentencing decision for this defendant.

### III.

We reject defendant Oduloye's claims that the district court erred in sentencing him and that he deserves a new presentence investigation on the grounds that the probation officer was biased against him. The decision of the district court is, therefore,

AFFIRMED.