**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph MORRIS, Defendant–Appellant.**

No. 95–1457.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1995.

Decided Feb. 14, 1996.

Barry Rand Elden, Chief of Appeals, James Wright (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

John E. Horn (argued), Tinley Park, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, COFFEY, Circuit Judge, and SKINNER, District Judge.*

SKINNER, District Judge.

Defendant-appellant Joseph Morris was indicted for possessing heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and traveling in interstate commerce to promote narcotics activity, in violation of 18 U.S.C. § 1952(a)(3). After Morris

* Hon. Walter Jay Skinner of the District of Massa-    chusetts, sitting by designation.

pled guilty, the district court sentenced Morris to 160 months incarceration, followed by a five year period of supervised release. Morris appeals his sentence, arguing that the district court erred in ascertaining the relevant conduct and the amount of heroin at issue for sentencing purposes, and in refusing to award a two point reduction in offense level for acceptance of responsibility. We affirm.

## I.

## BACKGROUND

### A. *Facts*

On May 14, 1993, two agents from the Drug Enforcement Administration ("DEA") stopped Joseph Morris shortly after he disembarked from a New York Amtrack train in Chicago's Union Station. After a brief period of questioning, the agents obtained Morris' consent to search his duffel bag. Among other items, the agents found several balloons filled with a substantial quantity of a white powdery substance, which subsequent lab analysis indicated was approximately 600 grams of heroin. Morris was placed under arrest.

At the time he was taken into custody, Morris was in possession of a round-trip Air Afrique Airlines ticket between Accra, Ghana and New York City, an American passport indicating frequent travel between Ghana and New York during 1992 and 1993, rental receipts to two storage units in Alsip, Illinois, and $6,850 in cash. A search of the Alsip storage units pursuant to a warrant found two drug scales and several boxes of notebooks, international correspondence, and financial records.

After an unsuccessful (and unappealed) attempt to quash the arrest and suppress the evidence, Morris pled guilty to possession with intent to distribute 598 grams of heroin. Following the change of plea, Judge Duff directed the probation department to prepare a presentence report. As part of her investigation, the probation officer submitted the Alsip documents to the DEA for analysis. The DEA reported that Morris (1) controlled six bank accounts which transacted approximately $300,000 in business between September ber 1990 and May 1993, and (2) regularly received cashier's checks in thousand dollar increments from eight individuals. The analysis also revealed sixteen distinct references to "gram" amounts with the uniform price "$180.00 per gram," which the DEA concluded was consistent with both the record-keeping techniques and the price charged by traffickers of low grade heroin. Aggregating the total gram amounts, the Alsip records document 3.754 kilograms in heroin transactions.

### B. *The Sentencing Hearing*

As neither the government nor Morris offered testimony at the sentencing hearing, we assume that the district court based its findings exclusively on the presentence report and the DEA's analysis of the Alsip notes. At the sentencing hearing, the government argued that the trafficking activity reflected in the Alsip documents should be treated as part of the same course of conduct as the May 1993 offense, and that Morris should be sentenced for distribution of 4.352 kilograms of heroin. Morris disputed the inclusion of the additional heroin, arguing that because the records did not provide dates, locations, or names of the parties to these transactions, there was not a sufficient basis to determine whether the records depicted events which should be treated as part of the relevant course of conduct. Judge Duff disagreed and found that Morris' activities warranted a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3). Judge Duff also refused to credit Morris for acceptance of responsibility because Morris dedicated his allocution to accusing another individual with masterminding the crimes. Accordingly, Morris was sentenced to 160 months in prison, followed by five years supervised release.

## II.

## ANALYSIS

### A. *Course of Conduct*

Morris challenges the district court's inclusion of the 3.754 kilograms of Alsip heroin on several levels. The basis in the Sentencing Guidelines for increasing a criminal

sentence based on unindicted conduct is U.S.S.G. § 1B1.3(a)(2) (the "aggregation rule"). The rule provides that all "acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction" are to be accounted for in determination of the sentence. U.S.S.G. § 1B1.3(a)(2). Whether transactions are deemed to be part of the "same course of conduct" as ·the offense of conviction is to be determined from examination of the "similarity, regularity and temporal proximity of the incidents in question." *United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993).

■ The district court found that the DEA's analysis of the Alsip records was sufficient to include the additional heroin for sentencing purposes. A finding that multiple instances of drug trafficking constituted the same course of conduct must be supported by a preponderance of the evidence, and review of such factual determinations is under the clearly erroneous standard. *See, e.g., United States v. Garrett,* 45 F.3d 1135, 1141 (7th Cir.1995).

■ Morris' first argument is that the Alsip records and the DEA's analysis were not competent evidence and should not have been considered during the sentencing. The Federal Rules of Evidence do not apply to sentencing hearings. Fed.R.Evid.R. 1101(d)(3). Evidence considered by a sentencing court need not be admissible at trial; it must merely be "reasonably reliable." *See United States v. Morales,* 994 F.2d 386, 389 (7th Cir.1993). Circuit precedent suggests, moreover, that expert testimony interpreting drug notes would not only be "reasonably reliable," but actually admissible in evidence. *E.g., United States v. Hughes,* 970 F.2d 227, 236 (7th Cir.1992); *United States v. Duarte,* 950 F.2d 1255, 1260–61 (7th Cir.1991). Accordingly, consideration of this evidence at Morris' sentencing did not constitute error.

At the core of his appeal, Morris suggests that the Alsip notes lack sufficient content to define a course of conduct. Specifically, Morris asserts that because the transactions recorded in the notes do not mention the dates on which (or the parties to whom) he sold heroin, the evidence does not demonstrate temporal proximity or similarity to the May 1993 offense. Although the record indicates that Morris is correct that the drug notes do not refer to dates or parties to the transactions, we note in passing that elements of the DEA's analysis of the Alsip records suggest temporal proximity. The notes of the sixteen incidents were found amidst financial records documenting approximately $300,000 of transactions between March 1990 and May 1993, a figure which is on the same order of magnitude of the street value of the heroin Morris is alleged to have trafficked. Furthermore, a discrete customer base is suggested by the fact that the records contained certified cashier's checks from eight individuals. We are at a loss why these suggestions were not advanced during the sentencing hearing. Although Morris contends on appeal that some of the financial records date back to 1982, in our view there was a basis for the district court to have found that the preponderance of the evidence established temporal proximity.

In any case, the district court did not make a positive finding of temporal proximity. In detailing his reasoning for finding that the transactions depicted in the Alsip notes constituted a single course of conduct, Judge Duff questioned whether the evidence established temporal proximity:

> [W]ithout question in this Court's mind that there is similarity, there is regularity. The only question that could possibly be raised would be temporal proximity. The similarity is clear, his role was the same in all instances. The supply was the same. The product was the same. He was the collector, the renter, he had the lease, he had a regular cost, he was doing business, he had at least 16 events all separately documented, he had a fixed dollar amount, he had a Chicago area connection. All of the notes were in the same facility and contained by him in his security position with a location that was apparently, as far as this Court knows, used for nothing except that operation.

Sentencing Tr. at 23. We must now decide whether the absence of a finding of temporal proximity necessarily precluded the district court from finding a course of conduct. This

court has recently answered this question in the negative. *See Cedano–Rojas,* at 1180 ("finding a course of conduct in the absence of temporal proximity may not be clearly erroneous when there is a 'stronger showing' of similarity between the offense of conviction and the uncharged conduct.") (citing *United States v. Hahn,* 960 F.2d 903, 910 (9th Cir.1992)). *See also* U.S.S.G. § 1B1.3, comment. (n. 9(B)) ("a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity"). In determining whether a stronger showing of similarity of conduct has been made, "a court must look to the identity of the participants and their roles in the events at issue, as well as the nature, structure and location of the allegedly related transactions." *Cedano–Rojas,* at 1180; *cf. United States v. Sykes,* 7 F.3d 1331, 1337–38 (7th Cir.1993) (prosecution fails to demonstrate strong similarity).

The district judge carefully tracked the relevant factors in his determination that the prosecution had made a strong showing of similarity. Morris participated in each of the transactions, and the cashier's checks strongly suggest that a discrete group of eight intermediary distributors were the other participants in these transactions. Chicago served as the site of distribution for both the May 14 offense and the Alsip transactions. *Cf. United States v. Rivera,* 6 F.3d 431, 444–447 (7th Cir.1993) (narcotic activities in Sioux City, Milwaukee, Utah, and Los Angeles found to be part of the same course of conduct). It may be surmised from the airplane tickets and the international travel documented in Morris' passport that the heroin originated in Ghana. The record further suggests that vital elements of the transactions remained constant, including the uniform price of $180 per gram, the sale of heroin in thousand dollar increments, the use of cashier's checks as a method of payment, and the habit of keeping particularly meticulous business records. *Cf. United States v. Garcia,* 66 F.3d 851, 860 (7th Cir.1995) (finding structural similarity where each distribution involved "large quantities" of drugs and a common pattern of payment). This method of exporting large quantities of heroin to the greater metropolitan Chicago area is entirely consistent with the charged offense of May 14, 1993. The documentation of at least sixteen separate transactions in the Alsip records also strongly suggests regularity. The cumulative impact of all of these factors leads us to the conclusion that the district court was warranted in finding that a preponderance of the evidence demonstrated a course of conduct.

Morris makes a final suggestion that the district court failed to make sufficient factual findings to support application of the aggregation rule under *United States v. Duarte,* 950 F.2d 1255, 1266–67 (7th Cir. 1991). In *Duarte,* this court held *inter alia* that "the district court should explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, its finding that the unconvicted activities bore the necessary relation to the convicted offense." *Id.* This court has also remanded a sentence for more specific factual findings when the alleged temporal proximity encompassed transactions which occurred over a period of sixteen years. *See United States v. Beler,* 20 F.3d 1428, 1437 (7th Cir.1994). As indicated earlier, the district court made specific findings that the prosecution had satisfied a strong showing of similarity. Although the analysis was somewhat cursory, the district court adequately cited the factors it found relevant in determining a course of conduct.

### B. *Acceptance of Responsibility*

Morris also disputes the district judge's decision to deny a two point reduction for acceptance of responsibility. The determination whether a defendant has accepted responsibility under U.S.S.G. § 3E1.1 is a factual determination and is reviewed only for clear error. *See, e.g., United States v. Pitz,* 2 F.3d 723, 732 (7th Cir.1993).

Although Morris pled guilty, the district court is only required to treat such an admission as "significant evidence of acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n. 3). A guilty plea does not dispositively entitle a defendant to the two point adjustment as "a matter of right." *Id.* The defendant retains the burden for "clearly demon-

strating" that the reduction is warranted. U.S.S.G. § 3E1.1(a). This showing must be made by a preponderance of the evidence. *See United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993). The effectiveness of a guilty plea may be undermined "by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n. 3).

The district court interpreted two actions by Morris as inconsistent with an affirmative demonstration of responsibility. First, without the knowledge or assistance of defense counsel, Morris wrote a letter to the court stating that a certain Kweisi Aggrui had asked him to bring heroin into the country in May 1993, and that Morris was not otherwise involved in drug trafficking. Second, during his allocution, Morris indicated that Aggrui had exclusive access to the Alsip storage facility and was responsible for the documents therein. These asseverations suggest that Morris was trying to convince the court that he was an insignificant participant in the May 14 incident, and that he should not be held responsible for the heroin documented in the Alsip records. The district court properly found that both of these suggestions were inconsistent with acceptance of responsibility.

■ On appeal, Morris argues that the court's use of these attempts to disclaim responsibility was impermissible, on the grounds of public policy. Morris claims that his assertions about Aggrui were not shown to be false, and argues that truthful statements which tend to exonerate the defendant should not be considered as attempts to evade responsibility. In this case, the district judge was warranted in doubting the defendant's statements about Aggrui, which surfaced only in the last-minute letter and allocution. Even if such statements were not false, the acceptance of responsibility guideline indicates that truthful statements about relevant conduct "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n. 3). This court has been loathe to limit what a defendant may say prior to the imposition of a sentence. *See e.g., United States v. Barnes,* 948 F.2d 325, 328 (7th Cir.1991). At the same time, the district court may refer to the content of the allocution in determining that there has not been a genuine acceptance of responsibility. *See United States v. Clemmons,* 48 F.3d 1020, 1026 (7th Cir.1995); *United States v. Corbin,* 998 F.2d 1377, 1392–94 (7th Cir.1993).

For a similar reason, we reject Morris' argument that he should not be penalized for attempting to rebut the attribution of relevant conduct. Morris had earlier submitted objections to inclusion of the Alsip heroin prior to the sentencing hearing, focusing exclusively on the failure to establish temporal proximity. In these objections, Morris specifically stated that he was not objecting to the DEA's analysis and its conclusion that the Alsip records reflected Morris' activities. Accordingly, the court's finding that Morris failed to persuasively demonstrate acceptance of responsibility is entitled to great deference, and will not be disturbed on appeal. U.S.S.G. § 3E1.1, comment. (n. 5).

*C. Probation Officer Conflict of Interest*

■ As the final issue on appeal, Morris contends that because the court-appointed probation officer had an application pending at the United States Attorney's office responsible for this prosecution during the sentencing proceeding, the probation officer had an impermissible conflict of interest under *United States v. Oduloye,* 924 F.2d 116 (7th Cir. 1991). As we stated in *Oduloye,* we find the specter of such a potential conflict of interest or apparent conflict of interest on the part of a court-appointed judicial officer to be highly disturbing. *See In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) ("[T]o perform its high function in the best way 'justice must satisfy the appearance of justice' "). Appellate counsel admitted at oral argument that this issue had not been raised before the district judge. It does not appear on this record that the defendant suffered any actual prejudice. Without a determination by the district judge, and absent "exceptional circumstances," this court should not pass on this issue. *See Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976); *United*

 

*States v. Norris,* 34 F.3d 530, 532 (7th Cir. 1994).

### III.

### CONCLUSION

For the foregoing reasons, we AFFIRM the conviction and the sentence.