NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 14, 2007
Decided April 13, 2007

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Nos. 06-1659 & 06-2931

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeals from the United States |
| *Plaintiff-Appellee,* | District Court for the Northern |
| | District of Indiana, Hammond |
| *v.* | Division. |
| TIANNA DOXY and | No. 05 CR 25 |
| JEROME GARDNER, | |
| *Defendants-Appellants.* | James T. Moody, *Judge.* |

## O R D E R

A jury convicted Tianna Doxy and Jerome Gardner of possession of marijuana and possession with intent to distribute 50 grams or more of crack cocaine after they were stopped by two Gary, Indiana, police officers on a winter afternoon in 2005. Doxy was sentenced to 151 months in prison and Gardner, whom the district court concluded had prior drug convictions, received a life sentence. Both now appeal, arguing that the district court clearly erred when it denied their motion to suppress evidence. Gardner also raises several trial issues, including the district court's decision restricting his cross-examination of a police officer to whom he made an incriminating statement. He also raises sentencing issues.

The Gary officers involved in the stop, Shane Bolde and Burt Sanders, were together in Bolde's squad car when they noticed a Lincoln Navigator with unusually dark windows and no visible rear license plate, both of which are Indiana traffic infractions. They stopped the Navigator and approached it from opposite sides. Doxy was the driver with Gardner in the passenger seat. Bolde approached Doxy, who lowered the window and gave him her Illinois driver's license. She explained that she had recently purchased the car and pointed to an Illinois temporary registration sticker displayed in the front window. Meanwhile, Sanders used an instrument to measure the tint of the vehicle's windows, which he found to be darker than permitted by Indiana law. After confirming the validity of both Doxy's license and the temporary registration, Doxy was given two traffic citations, one for improperly displaying her temporary registration and the second for the illegal tint of the windows. With that, Bolde said Doxy could leave. He added, "Have a nice day." But the day for both Doxy and Gardner was about to get worse.

Just as Bolde was wrapping things up with Doxy, Sanders smelled what he thought was burning marijuana coming from the car. Doxy shifted the Navigator into drive and started to leave as Sanders called out to Bolde to stop her while rapping on the rear window. Bolde likewise knocked on the glass and shouted to Doxy not to leave.

When she stopped, Sanders approached the passenger-side door and directed Gardner to lower his window, which he did. The smell of marijuana intensified, and Sanders asked why they had been smoking the drug inside the car. Gardner, whose clothing was covered in marijuana residue, denied smoking and attempted to brush off his shirt; Sanders then ordered him from the car and placed him under arrest. Bolde did the same to Doxy and noticed a small plastic bag of what appeared to be marijuana partially exposed in the front pocket of her shirt (tests would later confirm that he was correct).

Both officers then searched the vehicle. Sanders found a marijuana butt lying in the center console cup holder, and Bolde unearthed another plastic bag between the center console and the passenger's seat. This time, however, the bag contained not marijuana but 160 grams of crack cocaine. As Bolde pulled it from the vehicle, Doxy yelled "It's mine."

After the arrests, Gardner was interviewed by Sergeant John Jelks. He waived his rights under <u>Miranda</u> and explained that he lived with Doxy and that the two co-owned the Navigator. He also confessed to smoking marijuana in the vehicle that afternoon, though he denied knowing about the crack cocaine.

The Fourth Amendment, as has been clear for almost 40 years, permits an investigatory stop if it is supported by reasonable suspicion, Terry v. Ohio, 392 U.S. 1 (1968), and a warrantless search of a vehicle is valid so long as there is probable cause. California v. Acevedo, 500 U.S. 565, 569-570 (1991). Whether the requisite reasonable suspicion and probable cause were in place are questions we review de novo, but the factual findings underlying those questions are reviewed only for clear error. United States v. Ford, 333 F.3d 839, 843 (7th Cir. 2003).

Doxy and Gardner argue that the traffic stop based on her infractions was over before Officer Sanders detected the odor of burning marijuana. But this point is irrelevant, as the scent of burning marijuana alone, if detected, justified resuming the stop. See United States v. Wimbush, 337 F.3d 947, 950–51 (7th Cir. 2003); whether we believe it was detected depends on the credibility of Officer Sanders. Because credibility determinations are entitled to exceptional deference, we must be convinced that Sanders' testimony was essentially unbelievable as a matter of law for this search to be invalid. See United States v. Smith, 308 F.3d 726, 746 (7th Cir. 2002).

It is hardly that. Gardner cites the short duration of the stop and the officers' less-than-perfect memories about where they were standing and how wide the passenger-side window was open, but such things only cloud the precise nature of how Sanders smelled the marijuana--certainly not enough to overcome our deference to the district court's credibility finding. Even the fact that Bolde did not himself detect the marijuana odor (at first) tells us little, for there are a host of plausible explanations, one being that Bolde just has a weaker sense of smell than his partner, another that he was simply focusing his senses on his discussion with Doxy and the validity of her license and registration. Besides, even if we were troubled by these questions, "[d]eference to the finder of fact, with the opportunity to observe the witnesses, supports credibility findings even in the face of some internal conflicts." Id. at 746.

Gardner also challenges an evidentiary decision made during the trial. After the prosecution called Sergeant Jelks to testify concerning Gardner's confession that he was smoking marijuana in the Navigator, Gardner, who did not himself testify, wanted to cross-examine him about a part of that confession where Gardner said he was unaware of the presence of the crack cocaine in the car. But the court would not permit him to get this information in front of the jury.

Typically, a party's self-serving, exculpatory, out-of-court statement is inadmissible hearsay. Under the Federal Rule of Evidence 106 rule of completeness, however, the introduction as evidence by one party of a part of a

writing or recording, permits the other party to "require the introduction . . . of any other part . . . which ought in fairness to be considered contemporaneously with it." Though the rule does not by its terms apply to oral statements, we have interpreted it to do so. United States v. Haddad, 10 F.3d 1252, 1258 (7th Cir. 1993).

The framework for applying the rule is described in United States v. Velasco, 953 F.2d 1467, 1475 (7th Cir. 1992). The rule applies depending on whether the other parts of the statement (1) explain the admitted evidence, (2) place the admitted portions in context, (3) will avoid misleading the trier of fact if admitted, and (4) ensure a fair and impartial understanding of all the evidence if admitted.

Gardner argues that because the government was allowed to question Jelks about his confession as it related to marijuana, he should be allowed to question the sergeant regarding his statements about the crack cocaine. He relies on Haddad, where a witness testified about the defendant's out-of-court admission that he knew there was marijuana under his bed. See 10 F.3d at 1258. Haddad wanted to cross-examine the witness to elicit further testimony that he had also denied knowing about a gun found under the bed right next to the marijuana, but the district court refused to allow it. On appeal, we held that because the marijuana and the gun were so close together, there was a significant risk that his marijuana admission alone would create the misleading inference that he also knew about the gun, thereby risking the jury's fair understanding of the full evidence (though we ultimately determined that the error was harmless). 10 F.3d at 1258–59.

Gardner argues that his case is no different than Haddad because the police found a marijuana butt in the center console cup holder and found the bag of crack cocaine buried between that console and the passenger seat, putting the items in close proximity. But we disagree, because although the physical distances in the two cases is similar, the risk of misleading inferences is altogether different. Gardner told Jelks only that he was smoking marijuana. He did not describe the location of the marijuana or admit that the butt found in the area of the center console was his. His admitted statement, then, did not reflect any awareness about the presence of certain items in the car--it described only his behavior. Even if it is reasonable to assume that the butt belonged to Gardner, there remains the step of inferring from his familiarity with the clearly visible portion of the center console that he was also aware of something hidden out of sight between that console and the passenger seat.

Haddad is distinguishable. We can imagine that if Haddad's marijuana were found in plain sight on the floor, the rule of completeness would not have applied, even if the gun under the bed was only inches away. The risk of misleading

inferences in that case would be decidedly less, because although knowledge of one hidden item might suggest knowledge of another hidden in the same general place, knowledge of a plainly <u>visible</u> item does not lead to the same inference about an object hidden from view. At a minimum, it is not clearly erroneous to think so.

Gardner also contends that the district court abused its discretion by admitting into evidence at the sentencing hearing what he says were improperly authenticated exhibits of records offered to prove the fact of his prior convictions. He cites Federal Rules of Evidence 901 and 902 and objects that several of the exhibits introduced included documents either held together by a paper clip or visibly restapled. He also complains that several of the officials who completed written declarations attesting to the validity of these documents failed to make unequivocally clear the precise nature and breadth of their responsibility over the records they mean to authenticate (he does not, however, offer any basis to question the authority of any of these officials to make these declarations).

We find these arguments totally without merit. For one thing, the Federal Rules of Evidence do not apply at sentencing hearings. <u>See</u> Fed. R. Evid. 1101(d)(3). Rather, evidence may be admitted so long as it is "reasonably reliable," regardless of whether the same would have been admissible at trial. <u>United States v. Morris</u>, 76 F.3d 171, 174 (7th Cir. 1996). Moreover, we review the district court's judgment in these situations only for clear error. <u>United States v. Johnson</u>, 324 F.3d 875, 877 (7th Cir. 2003). There is simply no basis for concluding that the district clearly erred in relying upon declared documents attached with paper clips rather than staples and signed by named officials with obvious (if only generally described) authority.

Finally, he argues that his Fifth and Sixth Amendment rights were violated because the district court imposed a life sentence based in part on two prior convictions that were not proven beyond a reasonable doubt before a jury. Although he concedes that this argument is precluded by <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), he raises it for purposes of preserving the issue. Because <u>Almendarez-Torres</u> remains valid until the Supreme Court overrules it, we reject this final claim by Mr. Gardner.

The judgment of the district court is AFFIRMED.