**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard B. ALLENDER, Defendant–
Appellant.**

No. 94–3200.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1995.

Decided Aug. 4, 1995.

Rehearing and Suggestion for
Rehearing En Banc Denied
Sept. 19, 1995.

James M. Warden, Asst. U.S. Atty. (argued), Indianapolis, IN, for U.S.

Carl L. Epstein (argued), Indianapolis, IN, for Richard B. Allender.

Before CUDAHY, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Richard Bert Allender was convicted by a jury of eight counts of bank fraud in violation of 18 U.S.C. § 1344. He was sentenced to 51 months imprisonment on each count, to be served concurrently, followed by five years of supervised release. We affirm.

## I. Background

First State Bank of Morgantown, Indiana is a federally insured financial institution. 18 U.S.C. § 1344 makes it illegal to knowingly defraud or use false or fraudulent pretenses to obtain money from such a financial institution. Nevertheless, between September 1989 and July 1991, Allender obtained a series of nine loans from First State Bank using various false statements. Five of these loans were obtained by forging the signature of a longtime family friend and previous Morgantown resident, Ruth Howell. The first loan, in the amount of $15,000.00, was taken out on September 23, 1989. Allender forged Howell's name on a promissory note and again on the disbursement check payable solely to Howell. The second loan was disbursed on October 25, 1989 in the amount of $26,000.00. Allender again forged Howell's signature on this loan, but was also a co-signor. Part of the proceeds of this second loan were used to pay off the first loan. The next three loans, dated April 23, 1990 ($25,000.00), October 20, 1990 ($23,000.00) and April 18, 1991 ($19,000.00), were obtained in a fashion similar to the second loan—also without Howell's knowledge or consent—and were renewals of the second loan. After the last of these loans went into default, the bank charged off the balance.

On January 15, 1990, Allender used the name of Darren Whiteside to take out a loan of $24,000.00. Whiteside, a social acquaintance of Allender, had no business relationship with First State Bank. As with the Howell loans, this loan purported to bear the signatures of both Whiteside and Allender. Whiteside, however, testified that he had not authorized this loan. In addition, the collateral listed on the loan was not owned by either Whiteside or Allender. In fact, it did not exist. The bank charged off this loan too.

Finally, Allender secured three other loans by pledging collateral (heavy equipment) that did not exist. Two of these loans also purported to bear the signature of Allender's father, which Allender admitted to signing without his father's knowledge. Each of these loans went into default and were charged off by the bank.

After an FBI investigation uncovered these and other suspicious loan deals involving Allender and First State Bank, Allender was charged with violating 18 U.S.C. § 1344.

The superseding indictment originally contained ten counts, but was reduced to nine after the district court granted, in part, Allender's motion to dismiss certain counts as multiplicitous. Of these nine counts (contained in the amended superseding indictment), Allender was convicted of eight. He was acquitted of count five, involving the Darren Whiteside loan.

## II. Analysis

On appeal, Allender asserts five errors: (1) that the district court erred in denying his motion to dismiss the subsequent Ruth Howell loans as multiplicitous, (2) that he received ineffective assistance of trial counsel, (3) that there was insufficient evidence to support his convictions, (4) that the district court erred in instructing the jury, and (5) that the district court erred in determining his sentence. We address each contention in order.

First, Allender claims that the amended superseding indictment in this case contained multiplicitous counts, specifically the five Ruth Howell loans. He alleges that it was error for the district court to deny his motion to dismiss, as multiplicitous, the last four of these loans.

■■■ Multiplicity is the charging of a single offense in separate counts of an indictment. *United States v. Gonzalez*, 933 F.2d 417, 424 (7th Cir.1991). This exposes a defendant to the threat of receiving multiple punishment for the same offense. *Id.* In order to determine whether a given indictment contains multiplicitous counts, we look to the applicable criminal statute to see what the allowable "unit" of prosecution is—the minimum amount of activity for which criminal liability attaches. *United States v. Song*, 934 F.2d 105, 108 (7th Cir.1991).

In this case, Allender was charged with violating the bank fraud statute, 18 U.S.C. § 1344, which provides that:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

   (1) to defraud a financial institution; or

   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

This and other circuits have consistently held that each "execution" of a scheme, rather than a mere "act in furtherance of such a scheme," constitutes a separate violation of § 1344. *United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995) (and cases cited therein). "Thus, for each count of conviction, there must be an execution." *United States v. Hammen*, 977 F.2d 379, 383 (7th Cir.1992).

■■■ Allender argues that the four subsequent Ruth Howell loans at issue in this case were not separate executions but merely renewals of the first fraudulent loan taken out in her name. He claims that there was no new money taken out (although, we note, the second loan was in an amount significantly in excess of the first loan). Also, because each loan was obtained by forging the signature of the same person, Ruth Howell, Allender contends that each individual loan was merely a step toward executing his scheme—merely one of many efforts—to obtain a single sum of money from the bank.

Determining exactly what constitutes an "execution" of a scheme can be difficult and generally depends on the facts of each case. *Longfellow*, 43 F.3d at 323; *United States v. Molinaro*, 11 F.3d 853, 860 (9th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 668, 130 L.Ed.2d 602 (1994). While there is not a great deal of guidance on this issue, courts have consistently held that a separate execution must be chronologically and substantively independent and not dependent on another for its existence. *Longfellow*, 43 F.3d at 323; *Molinaro*, 11 F.3d at 860.

The question here of course is whether, based on the facts of this case, the four subsequent Ruth Howell loans are chronologically and substantively independent. According to this court's decision in *Longfellow*, there can be no doubt that they are. In *Longfellow*, this court considered whether

the refinancing of a loan constituted a separate execution of a scheme under § 1344. *Longfellow*, 43 F.3d at 324. Finding that it was, the panel considered it significant that the transaction in question created a new and independent risk for the lending institution. *Id.* The court recognized that no new cash passed to the defendant, but nevertheless held that he deprived the Credit Union in that case of an opportunity for reimbursement through foreclosure. *Id.* at 324–25; *see also United States v. Hord*, 6 F.3d 276, 282 (5th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1551, 128 L.Ed.2d 200 (1994) (risk of loss, not just loss itself, supports conviction). Significantly, the court also observed that "[t]he fact that the two loans were related, or that the same Credit Union and Credit Union member was involved in both does not necessarily make them part of the same execution." *Longfellow*, at 325; *see also Hord*, 6 F.3d at 282 (same victim does not prove only one execution). And the court held that there was no indication that the subsequent loans were planned or contemplated together, a circumstance that may impact the chronological and substantive independence of these loans. *Longfellow*, 43 F.3d at 324.

Because the same factors are present here, the result in *Longfellow* drives the result in this case. The record clearly indicates that each loan put the bank at risk for the funds loaned—at least for another term of days. Allender's argument that no new tactics were used (*e.g.*, that all of these loans purported to obligate Ruth Howell as borrower) or that he used the subsequent loans to pay off the previous loans, as explained, avails him nothing. There is also nothing in the record indicating that the subsequent loans were planned or contemplated together. And finally, we note that, despite Allender's insistence that no new funds were put at risk after the first Ruth Howell loan, the record indicates that the second loan in this series was clearly for an amount in excess of the $15,000.00 obtained by Allender in the first loan. This alone could defeat Allender's claim, at least with respect to the second loan. *United States v. Brandon*, 17 F.3d 409, 422 (1st Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 34, and *cert. denied,* —— U.S. ——, 115 S.Ct. 81, 130

L.Ed.2d 34 (1994) (each time an identifiable sum of money is obtained by a specific fraudulent transaction, there is likely to be a separate execution of a scheme to defraud). After reviewing the record, therefore, we are convinced that the four loans challenged in this case are separate executions for the purposes of § 1344. The district court therefore did not err in denying that part of Allender's motion to dismiss, on grounds of multiplicity, aimed at these loans.

Allender next complains that his trial counsel was ineffective. At oral argument, we questioned Allender's attorney concerning his decision to raise this claim in this direct appeal. In making his appeal at this time, we explained that he was asking us to review a claim that likely had no factual basis in the trial record. *See United States v. South*, 28 F.3d 619, 629 (7th Cir.1994). And if undertaken at this time, our conclusion will be binding on the district court should Allender later decide to bring this challenge again under 28 U.S.C. § 2255. Therefore, "a defendant who presents an ineffective assistance claim for the first time on direct appeal has little to gain and everything to lose." *Id.* (internal quotations omitted). Nevertheless, Allender's attorney assured us that he understood the law on this point and wanted to bring this challenge now. We will oblige. *See Guinan v. United States*, 6 F.3d 468, 472–73 (7th Cir.1993) ("[W]e do not ordinarily forbid an appellant to present an argument for reversal merely because the probability that the argument will be accepted is low. We are not so paternalistic. If the argument is made and rejected, ... the appellant must live with the consequences").

■ Allender, in order to vacate his conviction on the basis of ineffective assistance of counsel, must establish two things: (1) that his attorney's performance fell below an objective level of reasonableness, and (2) that his attorney's error was so prejudicial that the result of the proceeding was rendered fundamentally unfair or unreliable. *Mason v. Godinez*, 47 F.3d 852, 855 (7th Cir.1995) (citing *Lockhart v. Fretwell,* — U.S. ——, —— – ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) and *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80

L.Ed.2d 674 (1984)). Here, Allender alleges three errors in his trial counsel's performance: (1) the failure to call Esther Hamilton, the bank's loan officer for the transactions in question, as a corroborating witness, (2) the failure to challenge the validity of the superseding indictment, and (3) the failure to object to jury instruction No. 16. As explained below, each claim is meritless.

■ First, Allender alleges that his trial counsel was ineffective for failing to subpoena Esther Hamilton and call her as a witness. Allender alleges that Hamilton would have testified that she instructed Allender to forge signatures and declare collateral that he did not own, and that this would have demonstrated that Allender did not "knowingly" commit the offenses for which he is charged. Because Allender's trial counsel sought to admit this evidence through Allender's own testimony (as inadmissible hearsay), but failed to call Hamilton herself, Allender suggests that his counsel's performance fell below an objective level of reasonableness. But there is a problem. Hamilton herself was under investigation for the same offenses at issue here. She therefore would have had a constitutional right to refuse to testify if called by either party. Despite his trial counsel's opinion of the value of Hamilton's testimony, therefore, it was not unreasonable for him to stipulate that she was not available. As this court has said, "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him. In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record." *United States v. Balzano,* 916 F.2d 1273, 1294 (7th Cir.1990). Moreover, Allender has not demonstrated that Hamilton's testimony would have been beneficial to him. He only speculates that she would have corroborated his story. It is just as likely that, even if she had agreed to testify, she would have damaged Allender in order to protect her own interests in the face of prosecution. Allender has therefore failed to demonstrate unreasonable performance on the part of his trial counsel or prejudice to his case from his trial counsel's decision not to call Hamilton as a witness.

Allender also claims that his trial counsel was ineffective for failing to challenge the sufficiency of the superseding indictment and for failing to object to jury instruction No. 16, which followed the language of the superseding indictment. The superseding indictment in this case tracked the language of § 1344, but failed to distinguish specifically between the two subsections. Allender claims that the indictment therefore did not allege whether he was in violation of subsection (1) or subsection (2).

■ An indictment is sufficient if it (1) states all the elements of the offense charged, (2) informs the defendant of the nature of the charge, enabling the defendant to prepare a defense, and (3) enables the defendant to plead the judgment as a bar to later prosecution of the same offense. *United States v. F.J. Vollmer & Co., Inc.,* 1 F.3d 1511, 1518 (7th Cir.1993), *cert. denied,* ——— U.S. ———, 114 S.Ct. 688, 126 L.Ed.2d 655 (1994). "In reviewing the sufficiency of the indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner." *United States v. McNeese,* 901 F.2d 585, 602 (7th Cir.1990). The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. *United States v. Webb,* 747 F.2d 278, 284 (5th Cir.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). It is generally sufficient that an indictment set forth the offense in the words of the statute itself—as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense. *United States v. Hinkle,* 637 F.2d 1154, 1157 (7th Cir.1981).

■ The indictment in this case is clearly constitutional. It set forth the charges against Allender using the language of the statute. The indictment also charged Allender under both subsections, specifically connecting the language used in subsection (1) to the language used in subsection (2) with the word "and." No reasonable reading of this indictment therefore would confuse its recipient as to what law he was charged with

violating. Beyond this Allender does not seriously contend that the indictment failed to inform him of the elements of the offense or allow him to prepare a defense. It clearly conforms to the minimal constitutional standards—and by a comfortable margin.

Allender also suggests that it was ineffective assistance when his trial counsel failed to object to jury instruction No. 16 which tracks the language of the indictment discussed above. But this argument presupposes that the indictment was defective. We have determined that it was not. Again, Allender can show no unreasonable performance or prejudice from his counsel's failure to object to either this indictment or this instruction.

■ Allender also challenges the sufficiency of the evidence supporting his convictions. Specifically, he contends that the government failed to prove beyond a reasonable doubt that he acted with specific intent to defraud, a necessary element of the crime of bank fraud. *United States v. Howard,* 30 F.3d 871, 874 (7th Cir.1994). Allender faces an uphill battle. We will uphold a challenge to the sufficiency of the evidence if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

■ Allender's argument on this point is dubious. In his words, "[t]he requisite intent to defraud is established only if it is proven beyond a reasonable doubt that the defendant acted knowingly and with intent to deceive.... The foregoing can only be established beyond a reasonable doubt by presenting testimony of reliance upon the alleged deception from the ostensible victim of the deception, Esther Hamilton, the bank's loan officer."

There are several things wrong with this argument, but it will suffice to say that, while § 1344(2) does require false or fraudulent pretenses, it does not require that anyone be fooled by them. *United States v. LeDonne,* 21 F.3d 1418, 1426 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994) (the aim of § 1344 is to punish the scheme to defraud rather than the end result). Evidence of reliance, that Allender wished to elicit from Esther Hamilton, is simply irrelevant. What is relevant is whether the defendant "knowingly exe- cute[d], or attempt[ed] to execute, a scheme or artifice . . ." to defraud the bank or obtain money by means of fraudulent pretenses. 18 U.S.C. § 1344. And there is plenty of evidence in the record on this point. For example, the jury heard Allender himself testify that he signed Ruth Howell's name on each of the loan documents bearing her name. They also heard the testimony of Ruth Howell indicating that she did not authorize the use of her name for these loans. Allender also admitted under questioning that he pledged equipment as collateral that either did not exist or did not belong to him. The jury also heard the representatives of two heavy-equipment companies testify that Allender had given the bank fictitious model and serial numbers for the purported pieces of equipment pledged as collateral. The evidence in this case is clearly enough to show the necessary intent. *Id.* (specific intent to defraud may be established by circumstantial evidence). Allender's challenge on this point therefore fails.

Allender next contends that it was error for the district court to give final jury instructions 19, 21, and 24.[1] Allender's contentions here are meritless, however, and so we will not spend long with them.

First, Allender challenges instructions 19 and 21, arguing that they instruct the jury to disregard "the inferential crime element of reliance upon the representation of the defendant." The language in final instruction 19 to which Allender objects provides that "it is not necessary for the government to show that the bank actually relied upon any misrepresentation to have been defrauded." The language in final instruction 21 to which Allender objects states that "[a] bank officer's approval of a loan containing false or fraudulent information provided by the defendant is not a defense to the charge of bank fraud . . ." But, as noted earlier, § 1344 does not require reliance as an ele-

---

1. Allender did not object to jury instruction No. 19 at trial. We therefore review the giving of this instruction for plain error. *United States v. Huels,* 31 F.3d 476, 479 (7th Cir.1994).

ment of the offense. It was therefore not error, let alone plain error, to so instruct the jury.

■ Nor was it error to give final instruction 24. This instruction, dubbed the "ostrich instruction," states that the jury "may infer knowledge from a combination of suspicion and indifference to the truth" and further states that "[i]f you find a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used the word." Allender claims that this instruction fails because the record does not contain facts supporting it. *United States v. Perez,* 43 F.3d 1131, 1137 (7th Cir.1994) (the court's instructions to the jury must be correct statements of the law that are supported by the evidence). But the record contains ample evidence from which the jury could infer that Allender strongly suspected (if not actually knew) that things were not as they seemed. Even if he was instructed by Esther Hamilton to forge signatures and lie about collateral (as he claims), it is beyond the pale to suggest that he did not suspect that something was amiss. Instruction 24 was a correct statement of the law and was clearly supported by the evidence. *United States v. Ramsey,* 785 F.2d 184, 190–91 (7th Cir.), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2924, 91 L.Ed.2d 552 (1986) (this exact instruction held permissible, especially in light of defendant's pleas of gullibility).

■ Finally, Allender claims that the district court erred in its sentencing determination. Allender makes two arguments here, but only one is of any substance. We will start with that one first. Allender argues that the court erroneously granted a nine-level increase over his base offense level of six under Sentencing Guidelines § 2F1.1(b)(1)(j) and § 1B1.3. Specifically, he challenges the court's consideration of certain evidence as relevant conduct when calculating the loss suffered by First State Bank at over $350,000.00. In computing a sentence, "[t]he factual findings of the district court will not be overturned unless they are clearly erroneous." *United States v.*

*Hatchett,* 31 F.3d 1411, 1418 (7th Cir.1994). The district court is to base its determinations upon the evidence in the record and upon its own credibility evaluations. *United States v. Cotts,* 14 F.3d 300, 305 (7th Cir. 1994). So long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence. *United States v. Miller,* 891 F.2d 1265, 1270 (7th Cir.1989).

Allender contends that it was error for the court to include in its calculations (1) the amount of loss charged off by the bank attributable to count 5, the Darren Whiteside loan (of which Allender was acquitted), (2) loans charged off by the bank in which Allender participated but that were not charged in the superseding indictment, and (3) the interest that Allender had agreed to pay on the loans at issue here.

■ Here it was clearly permissible for the court to include the first two amounts as relevant conduct, so long as there was competent evidence in the record to support the amounts—which was clearly the case here. The government produced evidence at sentencing regarding seven additional loans, in which Allender participated, that used similar fraudulent conduct but were not charged in the amended superseding indictment. Each of these seven loans was obtained during the same time period as the loans charged in the indictment and also involved at least one of the following misrepresentations by Allender: the pledge of nonexistent collateral, the forgery of a signature, or the misrepresentation of authority. *See United States v. Cedano–Rojas,* 999 F.2d 1175, 1180 (7th Cir.1993) (whether transactions are part of the same course of conduct as the offense of conviction depends on the similarity, regularity, and temporal proximity of the incidents in question). It was also permissible to include the amount charged off by the bank attributable to the count of acquittal. *See United States v. Masters,* 978 F.2d 281, 285 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993) (judges may take other crimes into account when selecting a sentence under the guide-

lines, even if the defendant has been charged with and acquitted of those crimes).

█ But whether the amount of interest due under these loans can be included in these calculations is somewhat less clear. Allender points us to Application Note 7 to Guideline § 2F1.1 which states that "loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred." He then argues that the interest mentioned in this Note includes the interest that he contracted to pay on the loans in this case. But that is not the type of interest referred to in this section of the Guidelines. This Note refers to speculative "opportunity cost" interest—the time value of money stolen from the victims. *United States v. Lowder*, 5 F.3d 467, 471 (10th Cir.1993). It does not refer to a guaranteed, specific rate of return that a defendant contracts or promises to pay. *Id.* This is the interpretation taken by several other circuits. For example, the Fifth Circuit noted in *United States v. Henderson*, 19 F.3d 917, 928–29 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 207, 130 L.Ed.2d 137 (1994), that "interest should be included [in these loss calculations] if, as here, the victim had a reasonable expectation of receiving interest from the transaction." *See also United States v. Goodchild*, 25 F.3d 55, 66 (1st Cir.1994); *United States v. Jones*, 933 F.2d 353, 354–55 (6th Cir.1991).

This is also implied in the language of the Note itself. Note 7 states that loss is the value of the thing stolen—money, property, or services. In the context of a loan agreement, the thing itself, or property, includes both the principal and the agreed-upon interest. But for the promise to pay interest, the bank would not have made the loan. The interest Allender challenges here could therefore properly be considered part of the property itself for purposes of Note 7. But even if it is properly deemed "interest" under this Note, the language allows for a distinction to be made between the types of interest based on the level of certainty with which the interest was due. The Note uses the phrase "interest the victim *could have* earned on

such funds." Inherent in this phrasing is a degree of speculation that is usually associated with mere investment opportunities—the time value of money. But where there is an enforceable agreement to pay a calculable sum, all speculation disappears. If this was the kind of interest contemplated by Note 7, the commentary drafters would likely have used different language, perhaps the phrase "interest the victim *would have* earned." They did not, and therefore we think that the only "interest" properly excluded from the loss calculations here is the opportunity cost value of the item stolen.

Having taken this interpretation, however, we note that this court has recently interpreted this Guidelines section and come to the opposite conclusion. *United States v. Clemmons*, 48 F.3d 1020, 1025 (7th Cir.1995). There, a panel of this court concluded that all future interest should be excluded from the calculations under Guidelines § 2F1.1 and that "[t]he degree of certainty with which defrauded investors expected a return on their investments is not, in our opinion, a significant distinction. . . . [F]ailure to receive the promised interest is not a loss at all, but a frustrated expectation." *Id. Clemmons* relied on the language cited above from Application Note 7 in coming to its conclusion. The court interpreted Note 7 to include reasonably certain interest, stating that "[w]e see no basis for distinguishing between the 'use of the money that [ought to] have come back to it' and interest which the funds *would have* earned 'had the offense not occurred, i.e., opportunity cost.'" *Id.* (quoting language from *Jones*, 933 F.2d at 354 and Application Note 7 respectively) (emphasis added). For the reasons stated above, we disagree and therefore hold that, while this Note might have been phrased more carefully, *see Goodchild*, 25 F.3d at 65–66, the better interpretation is the one adopted previously by the other circuits. The district court therefore did not err in including this interest in the total for purposes of calculating the loss under Guidelines § 2F1.1(b)(1)(j).[2]

Allender also challenges the district court's calculation of his criminal history level. He argues that the court should have granted his

---

2. Because this opinion conflicts with the holding in *United States v. Clemmons*, 48 F.3d 1020, 1025

(7th Cir.1995), it has been circulated among the judges in regular active service of this court in

request to depart downward from a criminal history level of IV to a criminal history level of III, arguing that his previous offenses for driving while intoxicated significantly inflated his criminal history beyond an appropriate level. He does not however challenge the factual basis for the district court's determination, nor does he argue that the court abused its discretion or felt legally compelled not to depart.

■ Where the district court's decision is based on the exercise of judicial discretion, a decision by the court not to depart downward from the guidelines is not a basis for review by this court. *United States v. McFarland,* 37 F.3d 1235, 1237 (7th Cir.1994). "Absent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the appropriate guidelines range." *United States v. Solis,* 923 F.2d 548, 551 (7th Cir.1991). Allender's argument here is just such a request. We therefore decline his invitation to review this allegation of error.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

accordance with Circuit Rule 40(f). A majority did not favor a rehearing *en banc.* A majority of the court has, however, agreed that *Clemmons* should be overruled to the extent that it conflicts with the holding in this opinion.