**UNITED STATES of America, Plaintiff,**

**v.**

**Kay ANDERSON, Defendant.**

No. 97–30028.

United States District Court,
C.D. Illinois,
Springfield Division.

March 11, 1998.

Timothy A. Bass, Springfield, IL, Hilary W. Frooman, Urbana, IL, for Plaintiff.

Howard W. Feldman, Springfield, IL, David R. Mote, Springfield, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

Motions to dismiss the indictment. Denied.

### I. BACKGROUND

The indictment in this case charges Kay Anderson with three counts of bank fraud

under 18 U.S.C. § 1344. That section provides:

> whoever knowingly executes, or attempts to execute a scheme or artifice—
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

The indictment alleges that she fraudulently obtained funds from the Mendon State Bank by representing that she would invest and maintain the funds for the Bank's benefit and that she then used the funds for her own purposes.

Defendant moves to dismiss the indictment on three grounds: *First,* she argues that the indictment contains insufficient allegations to support the charges contained therein; *Second,* she argues that even if the indictment does properly allege the commission of a crime, the charges are barred by the statute of limitations; *Third,* she argues that the Government's delay in bringing the indictment violated her due process rights.

## II. THE INDICTMENT

The indictment begins by describing the scheme through which Defendant Kay Anderson allegedly planned to fraudulently obtain the funds of Mendon State Bank ("the bank"). According to the indictment, the scheme involved Defendant travelling from Houston, Texas to the bank in Mendon, Illinois. There, she met with the officers and directors of the bank, representing herself as an experienced businessperson and offering to assist them in their efforts to set up certain corporate centers. Defendant obtained the funds from the bank by promising to invest the funds in four zero coupon bonds which Defendant would hold in safe-keeping for the benefit of the bank and certain of its borrowers.

The indictment further alleges that pursuant to the scheme, Defendant did not intend to, and did not in fact, live up to the representations and agreements made with the officers and directors of the bank. After obtaining the funds provided through the bank, Defendant purchased only three bonds, despite the fact that she had been given funds to purchase four. She then deposited these bonds into an Asset Reserve Account (ARA) she had opened at E.F. Hutton in the name of a certain AMZ Trust, the trustee of which was Defendant's son. The indictment further alleges that Defendant also maintained $143,500 of bank funds for her own use and purposes. Later, in May 1987, Defendant opened two accounts at Merrill Lynch. One of these accounts she opened in the name of a certain Nottingham Resources, Inc., a corporation listing three of Defendant's children as stockholders. She also opened another account in the name of AMZ Trust. Then, using the funds obtained through the bank and the value of the zero coupon bonds as collateral, Defendant caused the Nottingham Resources account to be credited with funds.

The indictment proceeds to describe three ways in which Defendant "executed and caused the execution of the scheme set forth above." These three executions form the substance of the three counts of the indictment. First, Count 1 alleges that on June 19, 1987 Defendant caused $25,000 of bank funds to be removed from her E.F. Hutton account and credited to the Nottingham Resources account at Merrill Lynch. Second, Count 2 alleges that on July 1, 1987 Defendant caused $70,000 in bank funds to be removed from her E.F. Hutton account and credited to the Nottingham Resources account at Merrill Lynch. Third, Count 3 alleges that between August 6 and 8, 1987, Defendant caused her Merrill Lynch account to pay five checks and VISA charges worth a total of $6,830.82.

## III. ANALYSIS

### A. Sufficiency Of The Indictment

The test for the sufficiency of an indictment "is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Allender,* 62 F.3d 909, 914 (7th Cir.1995). An indictment conforms to minimal constitu-

tional standards if it: (1) states all of the elements of the offense charged; (2) informs Defendant of the nature of the charge and enables her to prepare a defense; and (3) enables the defendant to plead the judgment as a bar to a later prosecution for the same offense. *Id.* An indictment generally will pass muster when it sets forth the offense in the words of the statute if those words unambiguously indicate all of the necessary elements of the offense. *Id.* Courts reviewing the sufficiency of the indictment should avoid reading that instrument in a "hypertechnical manner." *United States v. McNeese,* 901 F.2d 585, 601 (7th Cir.1990).

■ Here, the indictment clearly meets minimal constitutional standards. As described above, the indictment first gives a detailed description of Defendant's alleged scheme to defraud. It then specifically sets forth each execution of that scheme in counts 1–3 in language that tracks section 1344.[1]

Defendant contends, however, that the indictment does not explicitly allege that Defendant herself actually did some of the acts making up the scheme. Rather, she claims that the language of the indictment is designed to disguise the fact that certain third parties performed the actions alleged. For example, Defendant points out that the Government uses the word "would" rather than the word "did" to cover up the fact that Defendant did not herself actually execute an agreement with and obtain possession of moneys from the bank. Essentially, she accuses the Government of artfully drafting the indictment in order to disguise the fact Defendant did not actually perform acts which would constitute a violation of section 1344.

Defendant cites no authority that would justify this Court parsing words of the indictment to determine whether they unambiguously express the idea that Defendant actually performed the acts described. Further, the Court declines to adopt such a "hypertechnical" reading of the indictment. Admittedly, the odd verb conjugations and passive voice render the instrument less than a mod-el of clarity. If these grammatical peculiarities were used by the Government to hide the fact that Defendant did not commit the acts necessary to constitute bank fraud, then the Government has acted unethically and it will undoubtedly be unable to prove its case. The peculiarities themselves, however, do not render the indictment constitutionally defective.

### B. Statute of Limitations

■ Defendant also argues that the charges brought in this indictment are barred by the ten-year statute of limitations governing bank fraud. *See* 18 U.S.C. § 3293. Defendant contends that any bank fraud must have occurred when Defendant initially duped Mendon State Bank into entrusting her with money to purchase the zero coupon bonds. Any such entrustment, she contends, must have occurred before June 19, 1987, ten years before the filing of the indictment. Thus, she concludes, the crime was "complete" more than ten years before the action was brought and she is therefore protected by the statute of limitations. *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970) ("[s]tatute of limitations begins to run when the crime is complete"). Notably, Defendant does not argue that the allegations forming counts 1–3 occurred more than ten years before the indictment was filed. Rather, she argues that those allegations could not constitute the offense or a portion of the offense of bank fraud and thus the fact that they occurred within the ten year limitations period is irrelevant. The issue for this Court to decide, therefore, is whether the conduct set out in counts 1–3 could constitute a violation or the continuation of a violation of the bank fraud statute.

The Seventh Circuit confronted this issue in *United States v. Longfellow,* 43 F.3d 318 (7th Cir.1994). In that case the defendant had engaged in six fraudulent loan transactions, all of which were too old to charge under the statute of limitations. However,

---

1. For example, paragraph 2 of Count 2 reads:
   On or about July 1, 1987, Kay Anderson knowingly executed and caused the execution of the scheme set forth above when she caused $70,000 originally obtained from Mendon State Bank to be removed from her ARA account which was established under the name of AMZ Trust at E.F. Hutton and credited to the Nottingham account at Merrill Lynch.
   In violation of Title 18, United States Code, Section § 1344(1)(2) [sic].

the indictment in that case charged as the "execution" of the fraudulent scheme, a loan-refinancing executed by the defendant that fell within the statute of limitations. The court stated that the charge of bank fraud would not be barred by the statute if the loan refinancing constituted an "execution" of the scheme within the meaning of section 1344.

Recognizing the difficulty in defining an "execution," the court nevertheless enunciated some guiding principles:

> It is fairly well established that the bank fraud statute punishes each execution of a fraudulent scheme rather than each act in furtherance of such a scheme. However, a single scheme can be executed a number of times. While for each count of conviction there must be an execution, each execution need not give rise to a charge in the indictment. Further, § 1344 was intended to be construed broadly, and actions that tend to prove the existence of the scheme will often be the actions actually taken to execute the scheme.

*Id.* 43 F.3d at 323 (internal quotations and cites omitted). The court also stated that the issue of whether a number of actions are "separate" executions turns on whether they are "chronologically and substantively independent" from each other. *Id.; Allender,* 62 F.3d at 912.

Ultimately, the court concluded that the loan-refinancing constituted a separate execution of the scheme and therefore fell within the statute of limitations. The court found several factors significant in its determination. First, the court noted that the refinancing created a new and independent risk for the bank. While the defendant did not reap any obvious monetary gain from the refinancing, he "deprived the Credit Union of an opportunity for reimbursement through foreclosure." *Longfellow,* 43 F.3d at 324. The court also found significant the fact that the refinancing occurred two years after the original fraudulent loan, suggesting that the two actions were chronologically independent. *Id.* at 325. The refinancing, the court found, was not "planned and carried out in connection with the" previous loan transaction. *Id.* It "created a new risk for the Credit Union and arguably involved a renewed gain for" the defendant. *Id.* Having concluded that the refinancing constituted a

separate execution of the scheme, the Court stated that "[t]he fact that only one or two executions fell within the Statute of Limitations does not detract from the entire pattern of loans' being a scheme, and renders [the defendant] no less culpable for the entire scheme." *Id.*

Following the lead of the Seventh Circuit, the question in this case becomes whether the conduct alleged as "executions" in counts 1–3 constitute executions of the alleged scheme separate from the original act of duping the bank into handing over the money. The Court finds that these acts are sufficiently independent from the initial fraudulent acquisition of bank funds to bring the charged acts within the statute of limitations. By diverting funds to new accounts over which Defendant's children exercised control, Defendant "deprived the [bank] of an opportunity for reimbursement." *Longfellow,* 43 F.3d at 324.

According to the indictment, the bank informed Defendant of its claimed interest in those bonds in August 1986, after the initial disbursement of funds. The possibility that the bank could obtain reimbursement was thus still open at that point and Defendant's actions in diverting the funds significantly diminished the likelihood that such a possibility would come to pass. *See Id.; see also Allender,* 62 F.3d at 913 (fact that each transaction "put the bank at risk for the funds loaned" was significant in determination of whether they were separate executions). Also significant is the fact that Defendant's various diversions of the bank funds occurred within a substantial amount of time (approximately one year) after the initial disbursement of the funds. *Longfellow,* 43 F.3d at 325 (finding two year passage of time between acts "much" longer than cases where only a single execution has been found).

Finally, nothing suggests that the 1987 diversions were planned together with Defendant's initial acts in obtaining the bank funds. These diversions were not part of a "single integrally related act, closely planned and carried out in connection with" the initial 1986 transaction. *See id.* (internal citations and quotations omitted).

This result is consistent with a decision in at least one other circuit. In *United States v. Duncan*, 42 F.3d 97 (2d Cir.1994), the Second Circuit analyzed the question of whether a defendant's act of bank fraud had been completed before the enactment of the bank fraud statute. If so, it could not be charged under the Ex Post Facto Clause. *Duncan*, 42 F.3d at 103–105. The court in that case analyzed the question in terms of whether the execution "continued" past the date of enactment or was completed before that date. *Id.* at 104. The court found that the offense did not end when the defendants fraudulently acquired land by deceiving the bank. Rather, the criminal fraud continued until the defendants sold the property to third parties for a profit. *Id.* The court found the result "consistent with caselaw in the statute of limitations context, wherein we have held that a conspiratorial agreement that includes a payoff continues until the conspirators receive their anticipated profits." *Id.* at 105 (internal quotations and formatting omitted). The court saw "no reason why this rule does not extend to" bank fraud in the Ex Post Facto context.[2] *Id.*

If the bank fraud in *Duncan* continued past the defendants' initial fraudulent acquisition of the property until the defendants sold the property at a profit, then there is no reason why the bank fraud in this case should not be deemed to continue past the initial fraudulent acquisition of the bank funds until Defendant diverted funds to accounts controlled by third parties.

### C. Due Process

Defendant also seeks dismissal on due process grounds for prosecutorial delay in bringing the indictment. "To establish that preindictment delay violated the Due Process Clause, a defendant must show that the delay caused actual and substantial prejudice to his right to a fair trial, and beyond that there must be a showing that the government delayed to gain a tactical advantage or slowed the process down for some other impermissible reason." *United States v. Pardue*, 134 F.3d 1316, 1318 (7th Cir.1998).

In a half-hearted attempt to show prejudice, Defendant claims: that she lost her personal files; that her accountant had a stroke and may not be able to offer evidence; that she has been unable to locate her account representative at Merrill Lynch and E.F. Hutton; and that her "key witness" cannot be located and is living outside the country. These assertions do not meet Defendant's burden. She has not even attempted to explain how any delay "caused" these events, much less demonstrated how the allegedly lost witnesses or evidence would have helped her at trial. *See Id.* (finding that the defendant's "failure to provide any concrete basis for his claim of prejudice is a sufficient basis for denial of his motion").

### CONCLUSION

For the reasons discussed, Defendant's Motion To Dismiss Indictment and Supplemental Motion To Dismiss Indictment are denied.

---

**2.** For this reason, the Court finds unavailing Defendant's efforts to distinguish *Duncan* on the grounds that it dealt with conspiracy, as well as bank fraud. The court in *Duncan* treated its reasoning as applying with equal force to either conspiracy or to simple bank fraud. *See Duncan,* 42 F.3d at 104.