**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued September 12, 2006
Decided October 6, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-4294

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin |
| v. | No. 03-CR-119 |
| GREGG STEVEN ZIMMER, *Defendant-Appellant*. | William C. Griesbach, *Judge* |

**ORDER**

In this post-*Booker* case, Gregg Zimmer was sentenced to a term of 48 months after he pleaded guilty to two counts of bank fraud.  On appeal he challenges his sentence, arguing that the district court improperly determined the losses attributable to his criminal conduct and thus miscalculated his advisory guideline range.  Because any error in the district court's loss assessment is harmless and Zimmer's sentence is clearly reasonable, we affirm.

The details of how Zimmer pulled off his criminal shenanigans are not particularly important for our present purposes so we recount just the basics of his scheme.  In 1998, Zimmer obtained a Mastercard account from Firstar Bank with a

$20,000 line of credit that he could access by check, credit card, or cash advance.[1]
He made purchases and payments on the account for approximately one year. In
1999, however, Zimmer began making "payments" on the account balance using
checks drawn on accounts that lacked sufficient funds. He would make these
"payments" by depositing the bad checks at automatic teller machines not owned by
the drawee bank, which would cause the Firstar account to reflect a credit for the
payment the following business day and allow him several days to make purchases
and take cash advances against the credit before the drawee bank dishonored the
check. Firstar would then debit Zimmer's account for the amount of the dishonored
check and charge him a returned check fee. Zimmer maintained an artificial credit
balance on his Firstar account, while simultaneously increasing his original line of
credit, by using this fraudulent payment method until February 2000. By August
2000 the account reflected a balance of $158,682.39, including penalties and
interest.

In June 2003, a grand jury charged Zimmer with three counts of bank fraud.
*See* 18 U.S.C. § 1344(1), (2). Zimmer pleaded guilty to two counts. But he disagreed
with the government over the amount of loss attributable to him.

Zimmer's original presentence investigation report revealed losses of
$145,484.09. The probation officer arrived at the loss figure by taking the final
balance on the account of $158,682.39 and subtracting accrued interest of
$13,198.30. This amount corresponded to the amount of loss reported to the
probation officer by Firstar. Based upon this calculation, the probation officer
recommended a seven-level increase to Zimmer's base offense level because the total
was between $120,000 and $200,000. *See* U.S.S.G. § 2F1.1(b)(1)(H) (1998). The
probation officer also recommended a two-level increase because Zimmer's fraud
scheme involved more than minimal planning, *see id.* § 2F1.1(b)(2), and a two-level
reduction for acceptance of responsibility, *id.* § 3E1.1(a), resulting in a total offense
level of 13 and a guidelines imprisonment range of 12 to 18 months.

At his initial sentencing hearing in October 2004, Zimmer objected to the
probation officer's loss calculation, arguing that losses from his fraudulent conduct
totaled only $85,000. In support, he presented testimony from John G. Peters, a
certified public accountant, who had performed a "forensic accounting" of Zimmer's
Firstar account statements. Peters prepared a three-page spreadsheet
summarizing the transactions on Zimmer's account from February 16, 1999, to
September 18, 2000, and testified that he had identified three categories of charges

---

[1]Although both Zimmer and the government state in their briefs that
Zimmer's original line of credit was $25,000, Zimmer's credit card statements show
an initial credit line of $20,000.

that he believed should be excluded from the probation officer's loss calculation. The first category, Peters explained, included two debits to Zimmer's account for $12,000 and $20,000 that Peters believed occurred when Firstar received a dishonored check from the drawee bank, debited the amount of the returned check to Zimmer's account, redeposited the check without making a corresponding credit to the account, and then debited the account again when the drawee dishonored the same check a second time. Peters explained that he concluded that the two debits were erroneous by looking at Zimmer's Firstar statements and "crossmatching" the payments and debits on those statements with bank statements showing checks presented for payment on two accounts from which Zimmer admitted issuing NSF checks. When he "had too many bounces for one check being issued," he identified as erroneous any resulting debit of an identical amount on the credit card statements. Peters admitted, however, that he had found it "difficult" to determine which dishonored checks had been erroneously debited because numerous payments and returned-check debits of identical amounts appeared on the statements, and he was unable to decipher some of the transaction descriptions accompanying the debits. He also said nothing about whether he shared his conclusions with Firstar or asked Firstar's assistance in clarifying the two suspect charges. The second category, Peters said, consisted of interest and penalties totaling approximately $14,000 that "from an accounting perspective" should not have been included in the loss calculation. And the third category, according to Peters, was the original extension of credit, which he insisted was not a loss attributable to Zimmer's fraud but instead was merely a civil "bad debt." The government submitted copies of Zimmer's credit-card statments for April 1999 to August 2000 and attempted to impeach Peters's testimony but otherwise made little attempt to establish actual or intended losses. The court then adjourned the hearing, leaving the issue of losses unresolved pending the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

Although *Booker* was decided in January 2005, Zimmer's sentencing hearing did not resume until October 2005. In the interim, Zimmer stole approximately $100,000 from his wife and in-laws, abandoned his family, absconded from authorities for seven months, and went on a gambling spree. Due to Zimmer's conduct following the 2004 hearing, the probation officer prepared a revised presentence investigation report. The revised report started with the calculations of the original report but added a two-level increase for obstruction of justice, *see* U.S.S.G. § 3C1.1, and eliminated the two-level reduction for acceptance of responsibility. These adjustments resulted in a total offense level of 17 and an advisory guideline range of 24 to 30 months.

When the sentencing hearing resumed, the district court concluded that Zimmer was responsible for losses equaling the balance on his Firstar account as of August 2000—$158,682.39. Relying on our decision in *United States v. Allender*, 62

F.3d 909 (7th Cir. 1995), the district court reasoned that interest should be included in the loss calculation because, although the guidelines instruct that interest generally should be excluded from losses, in this case interest was part of the contract between Zimmer and Firstar and was determined with specificity. The court also reasoned that the original extension of credit should be included in the loss calculation. The district court did not, however, address Zimmer's argument that the loss calculation should be reduced by $32,000 to account for the dishonored checks that purportedly were debited to the account twice. The district court then adopted the probation officer's guidelines calculations; considered the factors set forth in 18 U.S.C. § 3553(a), with particular attention to Zimmer's conduct subsequent to the October 2004 hearing; and imposed a sentence of 48 months, 18 months beyond the top of the advisory range.

On appeal Zimmer challenges only the district court's loss calculation. He contends that it was error for the court to include in its computation (1) accrued interest, (2) the original extension of credit, and (3) erroneous debits arising from double-debiting of dishonored checks. Had these amounts been excluded from the calculation, Zimmer claims, "the total loss amount would have fallen below $70,000," resulting in a two-level decrease to his total offense level, *see* U.S.S.G. § 2F1.1(b)(1)(F) (1998), and an advisory guideline range of 18 to 24 months.

The district court's loss determination is a factual finding that we will not disturb unless it is clearly erroneous. *United States v. Berheide*, 421 F.3d 538, 540 (7th Cir. 2005); *United States v. Schaefer*, 384 F.3d 326, 331 (7th Cir. 2004). What constitutes a "loss," however, is a legal question that we review *de novo*. *Berheide*, 421 F.3d at 540.

Zimmer first contests the district court's inclusion of approximately $14,000 of accrued interest in the loss calculation. He abandons his position in the district court that interest should not have been included "from an accounting standpoint," and now argues that interest should not have been included because "the victim did not claim a loss that included the interest." This shift in position means that review of the interest question is only for plain error. *United States v. Burke*, 125 F.3d 401, 405 (7th Cir. 1997). But the standard of review does not change the outcome because the district court committed no error at all.

The district court was not bound by the loss amount Firstar reported to the probation officer. For the purpose of determining relevant conduct under U.S.S.G. § 2F1.1, the loss calculation starts with "the value of the money, property, or service unlawfully taken." U.S.S.G. § 2F1.1 cmt. n.8 (1998). Section 2F1.1 losses are broader than those amounts recoverable by the victim as restitution, *see United States v. Newsome*, 322 F.3d 328, 338-39 (4th Cir. 2003); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999), and may include interest the defendant contracted to

pay on loans, *Allender*, 62 F.3d at 917; *see United States v. Goodchild*, 25 F.3d 55, 66 (1st Cir. 1994); *United States v. Henderson*, 19 F.3d 917, 928-29 (5th Cir. 1994); *United States v. Jones*, 933 F.2d 353, 354-55 (6th Cir. 1991). Zimmer does not dispute that *Allender* governs this case. Instead he insists that the district court could not consider the accrued interest in its loss calculation because Firstar did not report it as a "loss." The sentencing guidelines, however, do not limit the district court's factual inquiry to only that conduct reported by the victim. *See* U.S.S.G. § 1B1.3(a)(3) (1998) (instructing that relevant conduct shall be determined by considering "*all* harm that resulted from" defendant's criminal conduct (emphasis added)). And in this case the government presented evidence from which the district court could conclude that Zimmer caused direct harm to Firstar of $145,484.09 as well as consequential harm of $13,198.30 in lost interest that he was bound by contract to pay Firstar. Thus the district court properly included the accrued interest in its loss calculation.

Zimmer next contests the district court's inclusion of the original line of credit in its loss assessment. He points to the district court's conclusion that his use of the credit card reflected "an intent not to pay any of it back at any time" and argues that he obtained the original extension of credit by legitimate means, made wholly legitimate payments toward the balance for one year before his fraudulent conduct began, and continued to make legitimate payments during the time he also made fraudulent payments.

The district court's refusal to reduce the loss calculation by an amount equal to the original extension of credit was not error. "Loss" for purpose of § 2F1.1(b) is the amount of loss stemming from the defendant's fraudulent conduct. *See Berheide*, 421 F.3d at 540; *United States v. Munoz*, 430 F.3d 1357, 1369 (11th Cir. 2005). Although isolated cases suggest that an original loan amount should not be included in a § 2F1.1 loss calculation where the loan was legitimately obtained but subsequently maintained by fraud, *see, e.g., Berheide*, 421 F.3d at 540; *United States v. Wilson*, 980 F.2d 259, 262 (4th Cir. 1992), the amounts included in the district court's loss calculation resulted from Zimmer's fraudulent conduct. Zimmer presented his first bad check in the amount of $10,000 to Firstar in April 1999 at a time when his original credit line was nearly exhausted. He then made additional, undisputed "payments" to Firstar using bad checks totaling $137,000. Although Zimmer also made legitimate payments to Firstar, he made fraudulent payments totaling at least $147,000 following exhaustion of his original credit line. This amount corresponds with the district court's loss assessment before interest of $145,484.09. Accordingly, the district court's loss calculation should not be reduced by the amount of Zimmer's original credit line.

Zimmer also challenges the district court's inclusion of what he says are erroneous debits of $12,000 and $20,000. He argues that remand is necessary

because the district court failed to make an explicit finding concerning the contested charges. *See* Fed. R. Crim. P. 32.

Zimmer is correct in part. Federal Rule of Criminal Procedure 32 requires that the district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B); *see United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005). And the district court never addressed Zimmer's objection at sentencing to inclusion in the loss computation of amounts he claimed were erroneously debited to his account. This was error. *See Cunningham*, 429 F.3d at 679 ("A judge who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight."). But failure to comply with Rule 32 is harmless error when resolution of the contested issue would not affect a defendant's sentence. *Id.* at 679; *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003).

The amounts Zimmer says were erroneously debited to his account do not affect his guidelines range, so we have no reason to conclude that the district court's failure to address his objection would have affected his ultimate sentence. Even if we assume that the district court would have found in Zimmer's favor and deducted $32,000 from its loss calculation of $158,682.39, losses for purposes of U.S.S.G. § 2F1.1 would still total $126,682.39. This figure falls between $120,000 and $200,000, so Zimmer's imprisonment range under the 1998 guidelines would remain unchanged.

In addition, if remanded, Zimmer would be resentenced under the current guidelines, not the 1998 guidelines. We recently held in *United States v. DeMaree*, 459 F.3d 791, 795 (7th Cir. 2006), that the Supreme Court's decision in *Booker* eliminated any ex post facto concern previously thought to arise from the application of guidelines that became more onerous after the offense was committed. Thus a defendant's guidelines range will always be calculated using the guidelines in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4)(A)(ii). Under the 2005 guidelines, Zimmer's total offense level would be 19—base offense level of seven, *see* U.S.S.G. § 2B1.1(a)(1) (2005), increased by ten levels for losses in excess of $120,000 but not more than $200,000, *see id.* § 2B1.1(b)(1)(F), (G), plus a two-level adjustment for obstruction of justice, *see id.* § 3C1.1—resulting in a guidelines imprisonment range of 30 to 37 months, a higher range than that calculated by the district court at Zimmer's sentencing.

Finally, we cannot say that Zimmer's 48-month sentence is unreasonable. In determining the sentence, the district court considered the factors set forth in § 3553(a), including the advisory guidelines range and Zimmer's history,

characteristics, and need to deter further criminal conduct. *See* 18 U.S.C. § 3553(a); *United States v. Walker*, 447 F.3d 999, 1007 (7th Cir. 2006). The court also explained that it found Zimmer's conduct following his initial sentencing hearing particularly influential to its decision to impose an above-guidelines sentence. Because these are appropriate considerations at sentencing, *see Walker*, 447 F.3d at 1007, and the district court adequately explained its decision to impose a sentence 18 months above the advisory guideline range, we AFFIRM Zimmer's sentence.