UNITED STATES of America,
Plaintiff–Appellee,

v.

James D. CLEMMONS, II,
Defendant–Appellant.

No. 94–1719.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1994.

Decided Feb. 23, 1995.

K. Tate Chambers, Asst. U.S. Atty., Rodger Heaton (argued), Darilynn J. Knauss, Asst. U.S. Atty., Peoria, IL, for plaintiff-appellee.

Richard H. Parsons (argued), Peoria, IL, for defendant-appellant.

Before BAUER and KANNE, Circuit Judges, and SKINNER, District Judge.*

SKINNER, District Judge.

Defendant-appellant James D. Clemmons was an insurance salesman who in 1988 acquired a list of names of persons who were either retired or close to retirement. He mailed these individuals business reply cards offering to check the individual's future Social Security benefits at no cost to them. Clemmons or one of his employees would meet with those who responded to this mailing and offer a better return on their savings than they were currently receiving by investing in one of his companies. Clemmons made various representations to the individuals about how their money would be invested, promised the investors a high rate of return and assured them that the investments were virtually risk free. Clemmons also told investors that he had taken out an insurance policy naming the individual investors as beneficiaries to protect their investments in the event that he died.

Clemmons entered into agreements with numerous individuals, issuing each a written contract stating the amount of money invested in Clemmons' companies, the interest rates, and the expected return on the investment.

Contrary to his representations, Clemmons did not invest the money but rather used the funds from new investors to pay prior investors "interest" payments. Invested funds were also used to pay business expenses for his companies as well as personal living expenses.

On September 20, 1993, a jury found Clemmons guilty of ten counts of mail fraud (18 U.S.C. § 1341), six counts of money laundering (18 U.S.C. § 1956), and eight counts of using fraud proceeds to conduct a financial transaction (18 U.S.C. § 1957).

At the sentencing hearing, Clemmons raised several objections, including an objection to paying the victims restitution, arguing that because he did not have the present ability to pay restitution the court could not predict his future ability to pay. The district court disagreed and ordered Clemmons to pay $200,000 in partial restitution but no fine. The court also found that Clemmons' total offense level was 29 which, with a criminal history category of I, results in an imprisonment range of 87–108 months. The court sentenced Clemmons to serve 108 months imprisonment to be followed by three years of supervised release.

Clemmons appeals this sentence arguing that the district court did not properly consider his financial resources in ordering him to pay an unreasonable amount of restitution, that the court improperly included interest in determining his total offense level, and that the sentencing court denied Clemmons any meaningful right to allocution in violation of his constitutional right to due process.

## 1. Amount of Restitution

Clemmons contends that the district court failed to consider his financial resources and the needs of his dependents before ordering him to pay $200,000 in restitution within a five-year period. Specifically, Clemmons claims that upon release from prison, he will be 40 years old, without a college degree, and unable to continue in his former profession as he will never be able to regain his insurance and security licenses. At the time of sentencing, his dependents included his wife, an unborn child, and a child from a previous marriage.

■■ In determining the amount of restitution, if any, to order, a court
> shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the de-

---

* Hon. Walter Jay Skinner, of the District of Massa-  chusetts, sitting by designation.

fendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a). Although advisable to do so, the sentencing judge need not·express explicit reliance on each of the mandatory factors. *United States v. Boyle*, 10 F.3d 485, 491 (7th Cir.1993). We must reverse where the defendant shows either "(1) that the judge explicitly repudiated the mandatory factor, or (2) that it was not improbable that the judge failed to consider the mandatory factor and was influenced thereby." *United States v. Gomer*, 764 F.2d 1221, 1223 (7th Cir.1985). "Conversely, we will sustain an order of restitution if the district court considered the requisite factors enunciated in the statute." *United States v. Helton*, 975 F.2d 430, 432 (7th Cir.1992).

In ruling on Clemmons' objection to the restitution order, the judge noted the victims' needs for restitution. The judge stated that

this is a case where there is a need to provide some restitution because some of these victims were relying upon these funds that the defendant stole from them for their retirement, for their enjoyment of life during their declining years, and it seems to me that if ever there was a case for restitution, this is a case when the victims are elderly or retired people who depend upon their life's savings for their remaining years.

The judge then considered what would be a reasonable amount of restitution in light of "the amount of loss the victims suffered, the financial resources of the defendant, the financial needs of the defendant and his dependents and other factors that the court deems appropriate."

■ The burden of demonstrating the financial resources and needs of a defendant and the needs of a defendant's dependents

rests on the defendant. 18 U.S.C. § 3664(d). In challenging a court's order of restitution, a defendant must show that the court abused its discretion. *United States v. Arvanitis*, 902 F.2d 489, 496 (7th Cir.1990).

■ Although the judge explicitly stated that he was considering Clemmons' financial resources and the needs of his dependents, the judge did not set forth in any detail his consideration of the Clemmons family's needs. However, detailed information is contained in the presentence report which was before the judge. The presentence report states that Clemmons had one child by his first wife but does not pay support to that child and that he has one child by his second wife. At the time of the presentence report, his third wife was employed by the Salvation Army with a monthly salary of $1,159 and was training to be a medical transcriber. The report also states that Clemmons' mother paid the couple's mortgage payment, as well as their. utilities and telephone bills.[1] Although it would be desirable, a sentencing judge is not required to explicitly enumerate that such factors were considered. In our view it is probable that the judge considered Clemmons' and his family's needs,. and that Clemmons did not meet his burden of demonstrating that his financial resources were inadequate.

■ Section 3664(a) does not require that the court find that a defendant can pay restitution, only that the judge consider his ability to pay. A person unable to pay restitution may be ordered to do so provided that there is some likelihood he will acquire the resources in the future. *United States v. Ahmad*, 2 F.3d 245, 247 (7th Cir.1993). A district court may consider a defendant's young age and potential to earn money in the future, *United States v. Gio*, 7 F.3d 1279, 1292 (7th Cir.1993), as well as the defendant's ingenuity and capabilities demonstrat-

---

1. In his brief Clemmons argues that the district court failed to consider the needs of his then unborn child being carried by his third wife. The record indicates that his third wife's pregnancy was not brought to the court's attention until the end of sentencing. Clemmons did not advise the court of his wife's pregnancy at the sentencing hearing. Clemmons waived his argument that the district court failed to consider the

needs of his unborn child when he failed to raise the argument before the trial court and instead raises it for the first time on appeal. *United States v. Carter*, 720 F.2d 941, 945 (7th Cir.1983). However, we do not suggest that the reasonableness of the judge's restitution order would be substantially affected even if the pregnancy had been brought to the court's attention in a timely fashion.

ed in concocting the fraudulent scheme. *United States v. Boula,* 997 F.2d 263, 268–69 (7th Cir.1993). The sentencing judge concluded that Clemmons "has showed great initiative in the past to find employment, to make substantial monies," and that Clemmons' "presentment of himself here indicates that he will be able to make money in the future, considering his abilities in selling ..."

■ In ordering restitution, the judge specifically noted that Clemmons' ability to make money was demonstrated in his carrying out the fraudulent scheme, and he remarked that Clemmons is young and has great selling skills. Furthermore, the presentence report states that Clemmons ran three businesses and started an investment club. Also, a court may consider the statements made by the defendant at sentencing, *Helton,* 975 F.2d at 432, and Clemmons told the court during allocution that he intended to complete his education. While the judge did not find that Clemmons would be able to pay restitution, and even expressed his doubts that the restitution would ever be paid, he did consider Clemmons' ability to pay and stated his basis for finding some likelihood that Clemmons will acquire the resources to pay in the future.

■ In *United States v. Mahoney,* 859 F.2d 47 (7th Cir.1988) the defendant's sentence was vacated upon a finding that the judge failed to consider the defendant's ability to pay and the needs of defendant's wife. This court found that the order of restitution which exceeded defendant's annual salary by nine times was an "impossible order of restitution ... a sham." *Id.* at 52. While the judge's restitution order of $200,000 may be harsh (indeed the judge suggested that a harsh order was justified in light of the fact that Clemmons' victims were elderly individuals who lost their life's savings and retirement funds), we cannot say that the order is a sham or that the judge abused his discretion. Nor can we say that the judge improperly failed to consider any of the mandatory factors set forth in 18 U.S.C. § 3664(a).

■ Furthermore, a restitution order may be revised in the event future circumstances make its enforcement impossible or draconian. *See United States v. Blanchard,* 9 F.3d 22, 25 (6th Cir.1993).

## 2. Inclusion of Interest in Calculating the Offense Level

In his second point of appeal, Clemmons argues that the district court erred by including the interest that the victims lost on their loans in calculating the guideline offense level. The investors were found to have lost $407,000 in monies paid to Clemmons. In the presentence report, the probation officer included as part of the total loss the interest Clemmons promised to pay the investors on the loans that they made to him. The resulting loss was calculated as $529,021.21, which under U.S.S.G. § 2F1.1(b)(1)(K) added ten levels to the defendant's base offense level of six. Were the interest not included in the total loss, nine levels would be added to the base offense level. U.S.S.G. § 2F1.1(b)(1)(J).

In response to Clemmons' objection to the inclusion of interest in the total loss, the government stated that Clemmons induced investors to enter into loan contracts with the promise of a high interest return and cited *United States v. Lowder,* 5 F.3d 467 (10th Cir.1993) for the proposition that such interest is properly included in the calculation of loss under § 2F1.1. At the sentencing hearing the judge rejected Clemmons' objection, finding the *Lowder* rationale persuasive and holding that

> in the context of this fact situation where the person in a note promises to pay a certain return of interest and that return is really the key inducement to get people to part with their monies ... [the promised interest] should appropriately [be] consider[ed] as a loss ...

■ A district court's determination of loss is a finding of fact and therefore reviewed under a clearly erroneous standard. The definition of loss, however, is a legal question which we review de novo. *United States v. Loscalzo,* 18 F.3d 374, 386 (7th Cir.1994).

Section 2F1.1 of itself provides no clue as to the definition or valuation of "loss." Application Note 7, however, contains the following provision:

As in theft cases, loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred. The Supreme Court has held that we are constrained to follow the Sentencing Commission's commentary in the form of an application note unless it is inconsistent with the guideline itself. *Stinson v. United States*, —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). We find no inconsistency between the commentary and the guideline, since the guideline is silent on the subject of valuation.

The court in *United States v. Lowder, supra,* took the position that the commentary applied only to opportunity cost, and not to interest or earnings that were promised as part of the fraudulent scheme. The court relied on *United States v. Jones,* 933 F.2d 353 (6th Cir.1991). The court in *Jones* held that in the case of credit card fraud, interest on the principal amount of the fraud should be included in calculating the offense level. The rationale for the decision was that the credit card issuer "lost the use of the money that should have come back to it." This result seems to us to be in direct conflict with the commentary. We see no basis for distinguishing between "use of the money that should have come back to it" and interest which the funds would have earned "had the offense not occurred," i.e., opportunity cost. The degree of certainty with which defrauded investors expected a return on their investments is not, in our opinion, a significant distinction.

We note that two other circuits have adopted the *Lowder* rationale: *United States v. Henderson,* 19 F.3d 917 (5th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 207, 130 L.Ed.2d 137 (1994); *United States v. Goodchild,* 25 F.3d 55 (1st Cir.1994). In addition to perpetuating the misinterpretation of the commentary which we perceive in *United States v. Jones, supra,* these cases appear to adopt the concept that "loss" as it appears in the guidelines should include full economic loss, and that full economic loss includes the promised interest. In our view, however, failure to receive the promised interest is not

a loss at all, but a frustrated expectation. The true economic loss is the opportunity cost of the loss of the principal amount, and that is specifically excluded from the computation of the loss by Application Note 7. See *United States v. Bailey,* 975 F.2d 1028, 1030–31 (4th Cir.1992).

█ Accordingly, we vacate the district court's sentence and remand for resentencing with directions that the district court use the $407,000 out-of-pocket principal amount in the loss calculation under § 2F1.1. We need not address Clemmons' challenge to the amount of interest as calculated by the district court.

### 3. Allocution

The district court judge sentenced Clemmons at the top of the guideline range for several reasons, one being Clemmons' statements during allocution. Clemmons argues that he was effectively denied his right to allocution because he was penalized for what he said.

█ Federal Rule of Criminal Procedure 32(a)(1) requires the district court to give a defendant the opportunity to make a statement in his own behalf and to present any information in mitigation before sentence is imposed. *United States v. Serhant,* 740 F.2d 548, 554 (7th Cir.1984). Denial of the right to allocution or compliance by a judge in form only is grounds for the vacation or reversal of a sentence. *Haywood v. United States,* 393 F.2d 780, 782 (5th Cir.1968), *United States v. Sparrow,* 673 F.2d 862 (5th Cir.1982).

Clemmons maintained his innocence and lack of criminal intent to commit fraud throughout the trial and the sentencing. In response to Clemmons' reiterating his lack of criminal intent during allocution, the judge remarked,

> I was set to be sympathetic for a plea for the low end of the guidelines, but I don't think you deserve that now. And I intend to sentence you to the maximum because I don't think you learned a thing. I think you tried to con me today, and I don't believe it.... I think that the guidelines are giving you all the compassion you're

entitled to. I think I would feel differently if you had appeared before me and you admitted up to what you had done, but you haven't done that.

 The purpose of the right to allocution is to allow the defendant "to have the opportunity to present to the court his plea in mitigation." *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961). A defendant has the right "to present *any* information in mitigation of punishment." *Id.* (emphasis added). Clemmons' plea for mitigation was that he lacked the requisite criminal intent to commit fraud. Arguably the right to allocution and to present any information in mitigation of punishment is undermined if a convicted defendant risks an increased sentence by maintaining his innocence in an honest effort to mitigate his sentence.

 Balanced against this chilling effect on the right to allocution is the broad latitude afforded judges to impose a sentence within a guideline range. In selecting a point within the appropriate guideline range, a court may consider, without limitation, any information about the defendant's background, character and conduct, unless otherwise prohibited by law. U.S.S.G. § 1B1.4. The attitude and demeanor of the defendant during allocution are factors which the trial judge may consider. In sentencing Clemmons at the top of the guideline range, the judge relied on a number of factors in addition to Clemmons' statements during allocution. During sentencing the judge stated that the crimes of which Clemmons was convicted represent the worst of white collar offenses as he targeted the elderly and their life savings. The judge also stated his belief that Clemmons lied many times at trial.

In light of the other reasons enunciated by the judge at sentencing, we are not disposed to question the judge's assessment that Clemmons' background, character and conduct, taken in total, warranted a sentence at the top of the guideline range.

### Order

We affirm the district court's order of restitution. We vacate the sentence and remand for a recalculation of Clemmons' offense level in accordance with this opinion. We deny defendant's request requiring that resentencing be conducted by a different judge.