**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 5, 2018
Decided July 20, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-2544

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 14-cr-467-3 |
| DEBRA A. SCHULTZ, | |
| *Defendant-Appellant*. | Robert M. Dow, Jr., *Judge*. |

**O R D E R**

Debra Schultz participated in a scheme that stole over $500,000 from a non-profit organization that facilitates human-organ transplants. A jury found her guilty of three counts of wire fraud and the district court sentenced her to 21 months' imprisonment, well below the advisory guidelines range. Schultz appeals her sentence, contending that the district court erroneously applied a guideline adjustment for obstruction of justice and offered inconsistent explanations for what she sees as an unreasonably long sentence. We affirm, as the sentencing transcript shows that Schultz's sentence is procedurally sound and substantively reasonable.

## I

For her part in the overall fraud scheme, Schultz helped her cousin, Shari Hansen, embezzle over $280,000 from Hansen's non-profit employer, Gift of Hope. The organization works with doctors, hospitals, and families to procure organ donations for ailing patients in Illinois and Indiana. The fraud scheme ran between 2008 and 2010 and was straightforward, but costly for Gift of Hope. Hansen, who worked for the organization as an internal auditor, submitted fake invoices (for services never performed) from two fictitious doctors—including Schultz's then-minor son and Hansen's neighbor. Gift of Hope then issued checks to Schultz's son, with Hansen or Schultz in turn depositing the checks into a savings account that Schultz owned jointly with her son. Schultz also wrote checks to Hansen from the stolen proceeds.

The IRS learned of the deposits into Schultz's son's bank account and notified the son that he owed $20,000 in back income taxes. Schultz and Hansen responded not by ending the scheme, but by doubling down and stealing more money from Gift of Hope to pay the taxes. Everything fell apart for Schultz and Hansen when the organization conducted an internal audit and discovered that funds were missing. The government's ensuing investigation showed that Schultz pocketed approximately $6,000 from the scheme. For its part, Gift of Hope found that the scheme harmed the organization's ability to attract organ donors and partner hospitals.

During an interview with an investigating postal inspector, Schultz voluntarily provided handwriting exemplars for comparison to signatures on the embezzled checks. On nearly each exemplar, Schultz signed her entire name in cursive, whereas the embezzled checks showed that she ordinarily signed by using block letters for the capital "D" and "S" of her first and last name.

Schultz chose to testify in her own defense at trial and denied knowing that Hansen had stolen the funds deposited into her son's account. According to Schultz, Hansen asked to use this account to hide money from her husband, whom she wanted to divorce. Hansen testified for the government and disputed Schultz's version of events, explaining that Schultz knew of and played a central role in the scheme. The jury returned a guilty verdict, and the case proceeded to sentencing.

Sentencing began with the district court focusing on the Sentencing Guidelines and determining the advisory range to be 46 to 57 months' imprisonment. This range reflected a total offense level of 23, with upward adjustments imposed for obstructing justice by submitting false handwriting exemplars (2 levels per U.S.S.G. § 3C1.1),

involving a minor in the offense (2 levels per U.S.S.G. § 3B1.4), and engaging in conduct that resulted in a loss of $286,283 to Gift of Hope (12 levels per U.S.S.G. § 2B1.1(b)(1)(G)).

With the advisory guidelines range in place, the district court then shifted its focus to applying the sentencing factors delineated in 18 U.S.C. § 3553(a). The court emphasized that Schultz's conduct reflected serious wrongdoing—stealing from a nonprofit organization, failing to accept responsibility for her misconduct, obstructing justice by submitting "false" handwriting exemplars to the postal investigator, involving her minor son in the fraud, and, perhaps "most damning" of all, stealing yet more money from Gift of Hope to cover the income tax liability. The district judge also highlighted the need he saw to impose a sentence that would deter others from committing fraud.

On the mitigating side, the district court underscored Schultz's lack of any criminal history and the fact that she pocketed a small portion of the total loss amount, only about $6,000. Indeed, this latter point led the district court to find that the advisory guidelines range of 46 to 57 months, driven as it was by the 12-level upward adjustment for a loss amount of $286,283, substantially overstated Schultz's culpability.

To further mitigate her sentence, Schultz presented data to the district court purporting to show that defendants found guilty of fraud in the Northern District of Illinois typically received sentences below the advisory guidelines range. This data prompted a substantial exchange between the district court and Schultz's counsel regarding the cases offered for comparison purposes. Ultimately, the district court did not find Schultz's data persuasive, observing that the data left unknown what, if any, guidelines' adjustments (in terms of aggravating and mitigating factors) were present in each of the cases and sentences proffered for comparison.

The district court determined that each of these considerations combined to warrant a sentence of 21 months' imprisonment. This appeal then followed.

## II

Schultz invites us to vacate her sentence and to remand for resentencing on the basis of three alleged errors: that the district court improperly applied the obstruction-of-justice adjustment as part of computing the advisory guidelines range, failed to adequately explain the sentence, and imposed a substantively unreasonable sentence. The record belies each of these contentions.

A

Schultz challenges the district court's determination that a two-level obstruction-of-justice upward adjustment was warranted, contending that the district judge failed to find that the alleged obstruction occurred *during* the government's investigation. This contention is at odds with the trial testimony, which (over no objection from Schultz) established that Schultz submitted the handwriting exemplars to a postal inspector during the government's investigation. The district court saw the facts precisely this way, explaining at sentencing that the obstruction adjustment was warranted because "when you know you're under investigation," the "only thing that could explain" altering a signature is an attempt "to obstruct justice."

Continuing her focus on the obstruction adjustment, Schultz argues that the district court was required but failed to find that the handwriting exemplars were material to the government's investigation. This contention also misses the mark. The sentencing transcript makes clear that the district court found Schultz's submission of the false handwriting exemplars was material to the government's investigation: "So why would she sign her name differently, then, if she wasn't trying to push th[e] [government] off the scent?" If not, "why [else] would you do it?" Nothing more is required under the Guidelines. See U.S.S.G. § 3C1.1 cmt. n. 6 (defining "material" evidence as any "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination"). Regardless, Application Note 4(C) to U.S.S.G. § 3C1.1—without any mention of materiality—makes plain that the adjustment is authorized where a defendant "produc[es] or attempt[s] to produce a false, altered or counterfeit document or record during an official investigation or judicial proceeding." That is exactly what the facts show happened here.

On this record, the district court committed no error imposing the two-level obstruction adjustment to the advisory guidelines range. Accordingly, we need not consider the government's argument that any error would be harmless in light of the reasons contained in the district court's post-sentencing minute entry.

B

Schultz next argues that the district court committed procedural error at sentencing by offering inconsistent reasons for the imposed sentence. Here, too, the record shows otherwise.

There was no inconsistency in the reasons offered by the district judge in open court at sentencing. Contrary to Schultz's assertions, the district court was free to consider her obstructive conduct during its application of the section 3553(a) factors. See *United States v. Musgraves*, 883 F.3d 709, 715 (7th Cir. 2018) (explaining that a district judge was entitled to consider a defendant's conduct under section 3553(a) regardless of whether that same conduct affected the advisory guidelines determination); *United States v. Sanner*, 565 F.3d 400, 405–06 (7th Cir. 2009) (same). This is the path taken by the district court at sentencing, and there is nothing inconsistent with the district judge relying on the same facts that provided the foundation for guidelines' adjustments to inform the determination of the proper sentence as part of applying the factors in section 3553(a). Indeed, it makes little sense to say that the district court was allowed to consider any obstructive conduct for purposes of computing the advisory guidelines range but not for determining the appropriate term of imprisonment.

Nor do we agree with Schultz that the district judge's statements at sentencing conflicted with those contained in its post-sentencing statement of reasons. The statement of reasons simply set forth several of the aggravating factors that the district court relied on when imposing the sentence: "In aggravation … [Schultz] attempted to obstruct justice during the investigation of the offense, went to trial and testified in a manner that the jury clearly rejected, and has not manifested through her trial testimony, allocution, or otherwise any genuine remorse for the harm that she caused or acceptance of responsibility for her actions." This statement cannot be fairly read as the district court changing its justification for applying the obstruction adjustment.

The record demonstrates that the district court properly applied the guidelines and diligently considered the section 3553(a) factors before sentencing Schultz to 21 months' imprisonment. No more was required to ensure the procedural soundness of her sentence.

C

Finally, Schultz contends that her sentence is substantively unreasonable. To succeed on this path Schultz bears the burden of overcoming the presumption of reasonableness afforded to a sentence that falls below the advisory guidelines range. See *United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. 2018). Here, the district court imposed a sentence (21 months) that was less than half of the advisory guidelines range (of 46 to 57 months).

Schultz is mistaken in her argument that the district court anchored its sentencing decision in the loss amount suffered by Gift of Hope. Indeed, the record shows nearly the opposite, as the district court made plain that it believed the loss amount resulted in an advisory guidelines range that overstated Schultz's culpability and thus required substantial discounting to arrive at a just and fair sentence. The total loss amount for purposes of the guidelines calculation had no punitive anchoring effect, but instead served as the basis for the district court exercising the discretion afforded by section 3553(a) to arrive at a sentence of 21 months' imprisonment.

We also find no support in the record for Schultz's contention that there is an unwarranted disparity between her sentence and those sentences of fraud defendants nationally. On this score, the district judge reasonably observed that the data on which Schultz relied was unsuitable for comparison, because there was no way to know (from what Schultz put before the district court) whether the cases selected for comparison contained the aggravating and mitigating circumstances present here. No further explanation or finding was necessary in these circumstances.

Lastly, and for the first time on appeal, Schultz points to various academic articles questioning the empirical foundation for considerations of general deterrence as part of arguing that the district court committed error in identifying deterrence as a reason to justify a sentence of 21 months' imprisonment. Beyond the prospect of being waived, this position runs headlong into Congress's express enumeration in 18 U.S.C. § 3553(a)(2)(B) of deterrence (general and specific) as a proper sentencing factor. The district court's consideration of general deterrence was therefore entirely appropriate. See *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (explaining that general deterrence was a "legitimate consideration" for the sentencing court to consider). At bottom Schultz has not rebutted the presumption that her sentence is reasonable.

In the end, we see no procedural or substantive infirmity with the district court's decision to sentence Schultz to 21 months' imprisonment following her conviction for participating in a scheme to defraud Gift of Hope. Accordingly, the judgment of the district court is AFFIRMED.